[No. C023041. Third Dist. Sept. 11, 1996.]

FLORENCE WENDLAND et al., Petitoners, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
ROSE WENDLAND, Real Party in Interest.

COUNSEL

Brown, Hall & McKinley, John H. McKinley and Janie Hickok Siess for Petitioners.

No appearance for Respondent.

Taylor, Scott, Nichols & Matteucci and W. Stephen Scott for Real Party in Interest.

OPINION

SIMS, J.—The issue in this case is whether the trial court must appoint independent counsel to represent a conservatee in conservatorship proceedings under Probate Code section 1471, subdivision (b) (hereafter section 1471(b)). The conservatee, Robert Wendland, was brain-injured by a 1993 motor vehicle accident and receives food and fluids through a nasogastric tube. Robert's wife, real party in interest Rose Wendland, has been appointed temporary conservator and seeks to be appointed permanent conservator and to withdraw food and fluids from Robert, which she asserts is in accordance with his wishes.[1] Florence Wendland and Rebekah Vinson are respectively the mother and sister of Robert Wendland. They filed a petition for a writ of mandamus in this court upon the trial court's denial of their petition seeking appointment of independent counsel for Robert in the conservatorship proceedings.

We shall conclude independent counsel must be appointed for Robert.

FACTUAL AND PROCEDURAL BACKGROUND

Robert, age 43, has been hospitalized since a September 1993 motor vehicle accident.[2] He was comatose for more than a year before awakening in January 1995. The accident left Robert brain-injured. He receives food and fluids through a nasogastric (feeding) tube. However, he is not in a persistent vegetative state or terminally ill. With therapy, Robert has made some limited progress. He follows simple commands, has vision in his left eye, and is able to move his left extremities, though he is paralyzed on the right side. He is able to maneuver his electric wheelchair in response to verbal cues.

---

[1]For ease of reference, we refer to the various Wendlands by their first names.

[2]Since no written return was filed, we may accept the facts alleged in the mandamus petition as true. (*Shaffer* v. *Superior Court* (1995) 33 Cal.App.4th 993, 996, fn. 2 [39 Cal.Rptr.2d 506].)

In July 1995, Rose determined to withhold food and fluids, assertedly because Robert previously told her and other family members he would never want to live in a state of total dependence. Rose's decision was supported by Robert's physicians. The hospital ethics committee decided Rose's decision was appropriate and made plans to transfer Robert to a convalescent hospital where his feeding tube would be removed and he would die approximately six to thirty days thereafter.

Robert's mother and sister learned of these plans through an anonymous telephone call and obtained a temporary restraining order in early August 1995.

On August 8, 1995, Rose initiated proceedings to be appointed conservator for her husband. Her petition to be appointed conservator requested specific authority to withdraw life-sustaining treatment including nutrition and hydration.

A court investigator visited Robert several times and reported that Robert made no intelligible responses during the interviews but was actively participating in his rehabilitation therapy programs, though he was very, very limited. The investigator reported Robert had severe cognitive defects, much of the damage was irreversible, and there was a good possibility that there will be little or no improvement. The investigator recommended that Robert be given time. "He is cooperating in his own rehabilitation program. He is responsive to commands and enjoys the taste of a lemon and an orange. Once he is placed in a wheelchair, he is able to propel the chair when his . . . hand is placed on the joy stick and given the command to push it forward. I have seen him stop and start the chair and move it on his own without commands from others. Is this much of a life? I wonder. He, however, is cooperating and should be given the opportunity to continue."

The investigator said of Rose: "[S]he is a single parent with a host of responsibilities that are overwhelming at times. She is a compassionate caring person who is doing the very best that she can."

The investigator recommended appointment of counsel for Robert, though he recommended that it not be the public defender due to a potential conflict of interest.

On September 11, 1995, a hearing was held on Rose's petition in the trial court. Although the court investigator's report recommended appointment of counsel for Robert, the trial court did not appoint counsel. At the conclusion of the hearing the trial court appointed Rose temporary conservator of

Robert but did not grant her request for specific authority to withhold medical and/or life-sustaining treatment; the court continued the matter during which time Robert's therapy programs were to continue uninterrupted. The matter has since been continued several times and is now scheduled for hearing on September 16, 1996, apparently to determine whether to appoint Rose permanent conservator, and whether to grant her authority to withdraw life-sustaining treatment.

On January 24, 1996, after a couple of unsuccessful informal attempts to obtain appointed counsel for Robert, Florence and Rebekah filed a petition for appointment of independent counsel to represent conservatee in the trial court. Rose opposed the petition, arguing the conservatorship had already been established, the trial court at that time felt it was not necessary to appoint counsel, and there were no changed circumstances. Florence and Rebekah filed a reply asserting they need not show changed circumstances, and issues remain unresolved for which Robert should be represented, including the appropriateness of appointing Rose permanent conservator.

On February 13, 1996, a hearing was held. The trial court denied the petition for appointment of independent counsel. The court initially questioned what independent counsel could add to the proceedings in view of the court's perception that Robert would be unable to have any meaningful communication with a lawyer. After further argument, the trial court stated:

"In perusing the cases that have been handed down under [Probate Code sections] 1470 and 1471, I found some interesting language there in the Conservatorship of Sides, 1989 case, 211 Cal.App.3d 1086 at 1093 [260 Cal.Rptr. 16], it says appointed counsel in these conservatorship proceedings does not act as an adversary against the competing or against those competing for appointment as conservator, but serves as an advocate for the conservatee to insure that the best suited person is appointed conservator.

"I sat and thought about that language for a while. And . . . I think both sides here representing the diametrically opposed views are very ably represented by counsel. I think you are both well prepared to deal with the issues that are before us here. The battle lines in this matter I think are very clearly drawn, although the rules of engagement are still a little bit fuzzy, because we are out there as I mentioned before in terra cognitio [sic] as to California law. The respective positions of each side, however, have been very well stated to this point. The present litigants on both sides believe they represent what Robert wants, or what he did want, or as he previously expressed his desires, or as they believe he would express those desires now if he could.

"But by injecting a new dimension in this case by the appointment of an independent counsel I'm not sure that we would be adding anything to the

proceedings. It doesn't appear to me based on the language that I mentioned to you earlier that the appointment of independent counsel is mandatory at this juncture under Probate Code 1470 or 1471, although it might be discretionary. But considering it in that discretionary light I find no good purpose would be served by the appointing of the third attorney who would then necessarily have to concur with one side or the other because I think the issues here after all is said and done are very simple.[3] Rose believes that in Robert's present condition he would not want to continue with his life. The rest—the other members of his family on the other side believe that he would. It doesn't get much more black and white than that—life or death. I think the parties here have very well expressed the considerations that I have to take into account to reach a decision."

The trial court denied the petition for appointment of independent counsel for Robert and denied the request of Florence and Rebekah for a stay of proceedings.

On February 21, 1996, Florence and Rebekah filed a petition for writ of mandate and immediate stay in this court. On February 23, 1996, we denied the petition and request for stay. On May 6, 1996, pursuant to direction by the California Supreme Court, we vacated our original action and issued an alternative writ of mandate, to which no response was made. We then ordered the parties to maintain the status quo pending further order of this court. It appears from the petition of Florence and Rebekah that they will be seeking appointment as conservator for Robert when proceedings resume in the trial court.

Rose has not filed a written return in this court.

### DISCUSSION

 Florence and Rebekah contend the trial court erred in refusing to appoint independent counsel for Robert in the conservatorship proceedings. We agree.

Section 1471(b)[4] requires the trial court to appoint independent counsel for a conservatee or proposed conservatee for specified conservatorship

---

[3]We do not necessarily agree that the issues in this case are "simple." (See, e.g., *Conservatorship of Drabick* (1988) 200 Cal.App.3d 185 [245 Cal.Rptr. 840].) However, the instant proceeding challenges only the right to counsel and not the merits of the dispute. This is neither the time nor place to render an advisory opinion on the merits.

[4]Section 1471(b) provides: "If a conservatee or proposed conservatee does not plan to retain legal counsel and has not requested the court to appoint legal counsel, whether or not such person lacks or appears to lack legal capacity, the court shall, at or before the time of the

proceedings (including appointment or removal of conservators) if "the court determines that the appointment would be helpful to the resolution of the matter or is necessary to protect the interests of the conservatee or proposed conservatee."[5]

Section 1471(b) applies because the issue here is whether Robert is entitled to counsel at further conservatorship proceedings at which the trial court will determine whether to appoint his wife permanent conservator. Since his wife also plans to withdraw life-sustaining treatment, her appointment as conservator could lead to his death.[6]

■ The standard of review for denial of independent counsel under section 1471(b) is abuse of discretion. Thus, although we find no conservatorship cases on point, this situation is somewhat analogous to the question of appointment of counsel for minors in proceedings to terminate a parental relationship.[7] "[Former] Civil Code section 237.5, subdivision (a) [now Family Code section 7861[8]] requires the trial court in a [Civil Code section] 232 proceeding [to terminate parent-child relationship] to appoint counsel for a minor if it is required to protect the minor's interests. [Former Civil Code] [s]ection 237.5 'requires counsel be appointed [for the minor] at the commencement of proceedings absent an immediate showing upon which the court can exercise its discretion against making an appointment.' [Citation.]" (*In re Melicia L.* (1988) 207 Cal.App.3d 51, 54 [254 Cal.Rptr. 541],

hearing, appoint the public defender or private counsel to represent the interests of such person in any proceeding listed in subdivision (a) [including proceedings to establish or terminate a conservatorship and appoint or remove a conservator] if, based on information contained in the court investigator's report or obtained from any other source, the court determines that the. appointment would be helpful to the resolution of the matter or is necessary to protect the interests of the conservatee or proposed conservatee."

[5]A different statute, Probate Code section 1470, provides the court "may" appoint counsel for a conservatee or proposed conservatee in any conservatorship proceeding "if the court determines the person is not otherwise represented by legal counsel and that the appointment would be helpful to the resolution of the matter or is necessary to protect the person's interests."

[6]Rose has sought court approval before withdrawing life-sustaining treatment. We have no need in this proceeding to decide whether court approval is required. *Conservatorship of Drabick, supra,* 200 Cal.App.3d 185, indicated a conservator has authority under Probate Code section 2355 to withdraw treatment without court approval if the patient is in a persistent vegetative state and the interested parties all agree on the course of action (though the conservator has the right to petition for court approval before taking action). (200 Cal.App.3d at pp. 193-194, 200.) Here, the patient is not in a persistent vegetative state, and the interested parties disagree.

[7]The Law Revision Commission stated, with reference to the discretionary provision of Probate Code section 1470, that it was "comparable to the court's authority [under Family Code section 3150] to appoint counsel for a minor in a child custody proceeding under the Family Law Act." (20 Cal. Law Revision Com. Rep. (1990) p. 1235.)

[8]Family Code section 7861 provides in part: "The court shall consider whether the interests of the child require the appointment of counsel. If the court finds that the interests of the child require representation by counsel, the court shall appoint counsel to represent the child, whether or not the child is able to afford counsel. . . ."

citing *In re Richard E.* (1978) 21 Cal.3d 349, 355 [146 Cal.Rptr. 604, 579 P.2d 495].)

*In re Richard E.*, *supra*, 21 Cal.3d 349, involved an earlier version of former Civil Code section 237.5, which provided that a court *may* appoint counsel to represent a minor in a proceeding to terminate a parental relationship; however, an element of discretion remains in the later, mandatory version of the statute. (E.g., *In re Mario C.* (1990) 226 Cal.App.3d 599, 606 [276 Cal.Rptr. 548] ["The only discretion the court retains is to determine whether the child's interests would be best served by such an appointment."].)

The *Richard E.* court said: "[W]hen the court finds a child has separate interests not protected in the contest between parents and [the county child welfare agency], the court must exercise its discretion by appointing separate counsel. . . . [¶] . . . [W]hile the court possesses broad discretion in the matter [citation], appointment of counsel is nevertheless required in the absence of an affirmative showing the minor's interests would otherwise be protected. [Citation.]

"Thus, in absence of a showing on the issue of the need for independent counsel for a minor, failure to appoint constitutes error. However, this is not to say a court must always exercise its discretion in favor of appointing counsel. The court possesses broad discretion in determining need for counsel, and exercise of discretion will not be disturbed on appeal except for manifest abuse. . . . The rule we adopt of course requires counsel be appointed at the commencement of proceedings absent an immediate showing upon which the court can exercise its discretion against making an appointment." (*In re Richard E.*, *supra*, 21 Cal.3d at pp. 354-355.)

We recognize there is a distinction between this case and dependency proceedings to terminate a parent-child relationship, because Family Code section 7861 (fn. 8, *ante*) expressly requires the court to consider whether the interests of the child require the appointment of counsel.

Section 1471(b) (fn. 4, *ante*) does not expressly require the court to consider whether the interests of the conservatee or proposed conservatee require appointment of counsel. However, section 1471(b) implicitly so requires when the court is presented with information in a court investigator's report or other source raising the issue. ▮ Here, the court investigator's report recommended appointment of counsel for Robert. Under these circumstances, the trial court was required to—and did—consider whether the interests of Robert required the appointment of counsel for him.

The trial court said independent counsel would not be helpful or necessary because Robert's interests were adequately represented by his mother and sister. However, a person facing the final accounting of death should not be required to rely on the uncertain beneficence of relatives. Unlike parental termination cases, where a child's interests may be adequately represented by the county welfare agency which is an active and necessary participant in the contest to terminate the parental relationship, Robert's mother and sister are not necessary parties to the conservatorship proceedings instituted by Robert's wife, nor do they necessarily represent his interests.

Moreover, as we said in *Conservatorship of Sides* (1989) 211 Cal.App.3d 1086 [260 Cal.Rptr. 16]: "Appointed counsel does not act as an adversary against those competing for appointment as conservator, but serves as an advocate for the conservatee to ensure that the best suited person is appointed conservator." (*Id.* at p. 1093.)

Because Robert's very life is at stake, he is entitled to counsel to represent his interests, whatever those interests might be. (See fn. 3, *ante.*)

The trial court also said Robert was incapable of communicating meaningfully with counsel. However, assuming that to be the case, communication skills are not a prerequisite for appointment of counsel under section 1471(b) (fn. 4, *ante*). The statute contemplates that the conservatee or proposed conservatee may lack legal capacity. Even an unconscious conservatee may be entitled to counsel. Thus, in *Conservatorship of Drabick, supra,* 200 Cal.App.3d 185, the conservator of a comatose medical patient in a persistent vegetative state sought trial court approval to remove the patient's nasogastric feeding tube. The trial court appointed independent counsel for the conservatee under the discretionary provision of Probate Code section 1470. (*Id.* at pp. 212-213.) In holding the attorney was not required to advocate continued treatment, the Sixth District observed that when the client is permanently unconscious, the attorney must be guided by his own understanding of the client's best interests after investigating the case. (*Id.* at p. 212.)

Thus, an inability to communicate is not a reason to deny counsel to a conservatee or proposed conservatee who is otherwise entitled to counsel.

We conclude Robert is entitled to independent counsel under section 1471(b).

### DISPOSITION

Let a peremptory writ of mandate issue commanding respondent superior court to set aside its order denying the petition for appointment of independent counsel for Robert and enter a new and different order granting the

petition. The alternative writ, having served its purpose, is discharged. This court's stay is dissolved.

Puglia, P. J., concurred.

**RAYE, J.,** Concurring.—As the majority correctly explains, a conservatee whose right to live may ultimately hinge on decisions made by his court-appointed conservator is entitled to counsel to represent his interests. I concur fully in the majority's reasoning. I write separately to emphasize the complexity of the life and death issues underlying this litigation, a complexity possibly lost on the trial court, which thought "the issues here after all is said and done are very simple." Though I agree those issues are not ripe for resolution at this time, counsel appointed to represent the conservatee should not take our silence in addressing them as concurrence with the views expressed by the trial court. Quite simply, the issues are not simple.

This much is clear: A person has a constitutional right to refuse unwanted medical procedures, including artificial hydration and nutrition. (See *Cruzan v. Director, Missouri Dept. of Health* (1990) 497 U.S. 261, 277 [111 L.Ed.2d 224, 241, 110 S.Ct. 2841]; *Thor* v. *Superior Court* (1993) 5 Cal.4th 725 [21 Cal.Rptr.2d 357, 855 P.2d 375].)[1] There is little doubt that if Robert were competent, he could refuse further medical treatment. However, in light of his incompetence and his failure to give advanced directives as to medical treatment or the choice of a surrogate decisionmaker, Robert's freedom of choice "is a legal fiction at best." (*Conservatorship of Drabick* (1988) 200 Cal.App.3d 185, 208 [245 Cal.Rptr. 840].) Instead, the court must select a conservator who has broad authority to make decisions regarding treatment, guided by the patient's best interests.[2] (*Conservatorship of Drabick, supra,* 200 Cal.App.3d at p. 212). The conservator is not bound by the conservatee's prior informal expressions of intent.[3] (*Conservatorship of Drabick, supra,* 200 Cal.App.3d at pp. 210-211.) A decision regarding the removal of Robert's nasogastric tube does not hinge on judicial efforts to divine his unarticulated wishes regarding medical treatment. Counsel's task is thus not

---

[1] On the implications of the *Cruzan* decision generally, see Eaton and Larson, *Experimenting With the "Right to Die" in the Laboratory of the States* (1991) 25 Ga. L.Rev. 1253.

[2] Arguably, the constitutional right cannot be exercised by another. As one writer suggests, "A liberty interest is by definition an interest in doing as one chooses rather than as someone else would choose. Therefore it is not sensible to speak of a liberty interest as being exercised where someone else is choosing in the rightholder's stead." (Note, *The Limits of the Autonomy Principle: Refusal of Life-Sustaining Medical Treatment for Incompetent Persons* (1994) 22 Hofstra L.Rev. 703, 707.)

[3] On standards for surrogate decisionmaking, see Comment, *Life in Limbo: Revising Policies for Permanently Unconscious Patients* (1995) 31 Hous. L.Rev. 1609; Comment, *Letting Daddy Die: Adopting New Standards for Surrogate Decisionmaking* (1992) 39 UCLA L.Rev. 581.

simply to choose up sides between his wife, who believes he would not want to continue living, and the rest of his family who feel otherwise.[4]

The authority of a conservator to direct the withdrawal of nutrition and hydration from a patient in a persistent vegetative state has been considered by courts in California and elsewhere. (See *Conservatorship of Drabick, supra,* 200 Cal.App.3d 185, and cases collected in Note, *The Limits of the Autonomy Principle: Refusal of Life-Sustaining Medical Treatment for Incompetent Persons, supra,* 22 Hofstra L.Rev. at p. 707.) The conservator of a patient in a persistent vegetative state may properly order the cessation of artificial hydration and nutrition if the patient's best interests would be served by such a course of action. Cases upholding such authority reflect ethical judgments based on scientific knowledge regarding the quality of life of such persons and the consequences of withdrawing water and nutrition.[5] A person in a persistent vegetative state has no chance of recovery and is oblivious to his or her surroundings.[6] Such patients " 'do not have the capacity to experience pain or suffering. Pain and suffering are attributes of consciousness requiring cerebral cortical functioning, and patients who are permanently and completely unconscious cannot experience these symptoms.' " (Comment, *Life in Limbo: Revising Policies for Permanently Unconscious Patients, supra,* 31 Hous. L.Rev. at p. 1638.) The withdrawal of water and nutrition from a permanently unconscious patient does not have the same consequences it would have for a person with even limited cognitive functions. As discussed in the principal opinion, Robert is apparently not in a persistent vegetative state (PVS). Whether the principles developed in cases involving PVS patients apply to the present case remain to be seen, suggestions by the trial court to the contrary notwithstanding. Nothing in our opinion should be taken as expressing an opinion on that question.

---

[4]"The family of an incompetent person should not be empowered with a governmentally granted 'right' to decide for the incompetent person because they are likely to have the best idea of what the incompetent person would do if he were competent." (Note, *The Limits of the Autonomy Principle: Refusal of Life-Sustaining Medical Treatment for Incompetent Persons, supra,* 22 Hofstra L.Rev. at p. 707.)

[5]See Bleich, *Moral Debate and Semantic Sleight of Hand* (1993) 27 Suffolk U. L.Rev. 1173.

[6]The vegetative state has been defined as "a clinical condition of complete unawareness of the self and the environment, accompanied by sleep-wake cycles with either complete or partial preservation of hypothalamic and brain- stem autonomic functions." (*The Multi-Society Task Force on PVS, Medical Aspects of the Persistent Vegetative State, Pt. 1* (1994) 330 New Eng. J.Med. 1499, 1503.)