Opinion
 

 STONE (S. J.), P. J.
 

 Here we hold that an administrative law judge (ALJ) appointed pursuant to Penal Code section 2600 has the authority to order a forensic psychiatrist to assist an inmate and his attorney in an involuntary medication hearing. We reverse the order of the superior court granting California Department of Corrections’ (CDC) petition for writ of mandate.
 

 Donald Anthony appeals from an order of the San Luis Obispo Superior Court in which it granted the petition of CDC to compel ALJ Keith Gibson to reverse his decision to appoint a forensic psychiatrist to assist appellant in an involuntary medication hearing. He contends that: 1) the consent decree pursuant to
 
 Keyhea
 
 v.
 
 Rushen
 
 (1986) 178 Cal.App.3d 526 [223 Cal.Rptr. 746] provides the procedural framework for conducting involuntary medication hearings; 2) substantive guidelines are to be found in the Penal Code and Welfare and Institutions Code rather than in the Administrative Procedure Act (hereinafter APA) (Gov. Code, § 11500 et seq.); and 3) appointment of counsel at state expense to represent an indigent inmate necessarily includes funding for necessary services.
 

 
 *783
 
 CDC cross-appeals from that part of the superior court order providing that if, after the hearing, the ALJ finds that he cannot rule in this matter without further psychological evaluation, he may appoint an expert to examine appellant at state expense. We do not address CDC’s cross-appeal; it is moot since we reverse the order of the superior court granting the writ.
 

 Facts
 

 Appellant is an inmate at Atascadero State Hospital. He was committed to the CDC in 1987 as a result of convictions for sexually assaulting several women inside or near public rest rooms. He has an extensive psychiatric history which includes five prior commitments to the inpatient psychiatric unit at the California Medical Facility (CMF). In February of 1993, the Solano County Superior Court determined that appellant was gravely disabled and incompetent to refuse medications. As a result, the superior court authorized the administration of involuntary medications for one year.
 

 Appellant began to refuse to take antipsychotic medications after the 1993 court order expired. He began to suffer severe delusions, and would yell and scream that he was kidnapped and needed to speak with the President of the United States. He also began to refuse meals, refuse showers, and refuse to clean his cell. A second order authorizing the administration of involuntary medications was granted February 2, 1995, for a period until February 2, 1996. The instant proceedings involve a request for renewal of the second order.
 

 Dr. Mirza, staff psychiatrist for the Department of Mental Health (DMH), declared in support of renewal of the order for involuntary medication, that appellant is a paranoid schizophrenic and that the recommended courses of psychiatric treatment are antipsychotic medications. The threat to his health without the recommended treatment is that appellant will deteriorate further and there are no less invasive medically available alternatives to this treatment. Dr. Mirza stated that it is clear appellant lacks the capacity to consent to medication and is unable to weigh the risks and benefits in a coherent fashion. Dr. Mirza opined that if appellant were no longer on antipsychotic medications his condition would regress to the point where he would again be gravely disabled. Appellant has indicated that he does not believe that he has a mental illness and declared that he will not agree to take antipsychotic medications once the existing order expires.
 
 [1]
 

 At the hearing, appellant’s counsel requested that the ALJ appoint an independent psychiatrist. He explained that the renewal was based on a
 
 *784
 
 petition filed in another institution and, in his opinion, did not provide clear and convincing evidence of a grave disability because other than symptoms of a mental illness, appellant’s behavior at Atascadero State Hospital did not support a finding of grave disability.
 
 [2]
 
 Consequently, the services of an expert were necessary to respond to the petition. CDC objected that the appointment of an independent psychiatrist was an abuse of discretion “because the ALJ had no authority to appoint an independent psychiatrist in a
 
 Keyhea
 
 hearing matter.”
 

 The ALJ ordered that an independent psychiatrist be appointed to aid appellant and his counsel in responding to the petition. CDC obtained a temporary stay of the order and filed a petition for writ of mandate to the superior court to reverse the ALJ’s order. The superior court granted the writ.
 

 Discussion
 

 Since the issue presented is on undisputed facts and one of law, we exercise our independent judgment.
 
 (Ghirardo
 
 v.
 
 Antonioli
 
 (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) The petition in this case was filed pursuant to Keyhea v. Rushen (Super. Ct. Solano County, 1984, No. 67432) and on appeal,
 
 Keyhea
 
 v.
 
 Rushen, supra,
 
 178 Cal.App.3d 526.
 
 Keyhea
 
 was a taxpayers’ action challenging the practice at the CMF of involuntary treatment of prisoners with psychotropic drugs. The institutional procedure at CMF to instigate involuntary antipsychotic medication afforded prisoners no right to counsel and no right to judicial review. (178 Cal.App.3d 526, 531.)
 

 The two taxpayers and prisoner Canal Keyhea representing a class alleged that forced drugging without judicial sanction violated the federal and state Constitutions as well as Penal Code section 2600.
 
 (Keyhea
 
 v.
 
 Rushen, supra,
 
 178 Cal.App.3d 526, 532.) The trial court found that the state had violated
 
 *785
 
 Penal Code section 2600 by subjecting prisoners to long-term involuntary medication without a judicial determination of competency, the assistance of counsel, and a right to personal appearance.
 
 (Ibid.)
 
 The court enjoined the state from administering such medication without adhering to certain procedural requirements contained in the Lanterman-Petris-Short Act (hereinafter LPS) (Welf. & Inst. Code, § 5300 et seq., specifically, §§ 5350, 5358.2) and the Probate Code (specifically, §§ 1471, 1825). (178 Cal.App.3d at p. 532 & fn. 5.) The reviewing court affirmed, concluding that “. . . state prisoners, like nonprisoners under the LPS statutory scheme, are entitled to a judicial determination of their competency to refuse treatment before they can be subjected to long-term involuntary psychotropic medication. Mental health professionals and prison administrators may find this requirement cumbersome, but this is a price of life in a free society. Forced drugging is one of the earmarks of the gulag. It should be permitted in state institutions only after adherence to stringent substantive and procedural safeguards.”
 
 (Id.,
 
 at p. 542.)
 

 Penal Code section 2600 at the time of
 
 Keyhea
 
 provided that prisoners may be deprived of only such civil rights as reasonably necessary for prison security or public safety. (178 Cal.App.3d 526, 533.) Penal Code section 2600 was amended in 1994 to provide that a prisoner in a state prison “may during that period of confinement be deprived of such rights, and only such rights, as is reasonably related to legitimate penological interests. [¶ Nothing in this section shall be construed to permit the involuntary administration of psychotropic medication unless the process specified in the permanent injunction, dated October 31, 1986, in the matter of Keyhea v. Rushen, 178 Cal.App.3d 526 [223 Cal.Rptr. 746], has been followed. The judicial hearing for the authorization for the involuntary administration of psychotropic medication provided for in Part III of the injunction shall be conducted by an administrative law judge. ...”
 

 CDC asserts that neither Penal Code section 2600 nor the
 
 Keyhea
 
 injunction requires CDC to provide the inmate with an independent psychiatrist to assist his counsel in preparing an answer to the petition to medicate him. According to CDC, appellant’s due process rights are necessarily diminished by the fact of his incarceration and he retains only those rights which do not conflict with legitimate penological interests. (See
 
 Thor
 
 v.
 
 Superior Court
 
 (1993) 5 Cal.4th 725, 744-745 [21 Cal.Rptr.2d 357, 855 P.2d 375];
 
 People
 
 v.
 
 Superior Court (Hamilton)
 
 (1991) 230 Cal.App.3d 1592, 1595 [281 Cal.Rptr. 900].) Additionally, the procedural safeguards set forth in the
 
 Keyhea
 
 injunction are more than adequate under the United States Constitution and any additional safeguards not called for by statute or constitutional concerns would create an undue burden on the state.
 

 
 *786
 
 Neither the DMH nor the CDC is one of the agencies enumerated in the APA (Gov. Code, § 11501). Procedures for hearing used by the DMH and the CDC are not those set forth in the APA (Gov. Code, § 11503 et seq.). The APA primarily regulates licensing and other activities of the agencies to which it applies. Aside from use of an ALJ, Penal Code section 2600 does not specify that procedures set forth in the APA be adopted. Rather, it specifically refers to the
 
 Keyhea
 
 injunction. Consequently, the procedures of the APA do not control. (See
 
 Noll
 
 v.
 
 Department of Motor Vehicles
 
 (1969) 274 Cal.App.2d 281, 283 [79 Cal.Rptr. 236], holding that the Vehicle Code, rather than the APA, controls in Department of Motor Vehicles hearings.)
 

 Although proceedings to establish an involuntary conservatorship for a person who is gravely disabled under the LPS are essentially civil in nature, grave disability must be proved beyond a reasonable doubt to a unanimous jury because of the risk to freedom and the stigma attached to an involuntary conservatorship.
 
 (Conservatorship of Warrack
 
 (1992) 11 Cal.App.4th 641, 646 [14 Cal.Rptr.2d 99].) The reviewing court in
 
 Keyhea
 
 v.
 
 Rushen, supra,
 
 178 Cal.App.3d 526, looked to provisions of the LPS, noting that it “scrupulously protects the rights of involuntarily detained mentally disordered persons” and expressly affords the further qualified right to refuse or consent to medical treatment related specifically to the conservatee’s grave disability or necessary for the treatment of some other existing or continuing medical condition. (At pp. 534-535, discussing Welf. & Inst. Code, §§ 5325, 5327, 5357.) The reviewing court held that practically, as well as by implication, “. . . no involuntary treatment of any kind can take place outside the confines of the statutory guardianship and conservatorship mechanisms. . . .” (178 Cal.App.3d at p. 541.) The LPS provides “. . . the sole mechanism for involuntary administration of long-term psychotropic medication, and also requires a court determination of incompetency.”
 
 (Ibid.)
 

 Keyhea
 
 held that certain procedural protections under LPS are implied from the right to a judicial determination of competency. These protections are applicable to persons to be subjected to involuntary medication for more than 14 days and are a necessary and integral part of that right. “To divorce these protections from the right to a court determination of competency would deprive that right of any meaningful significance.” (178 Cal.App.3d 526, 542, fn. 14; see also
 
 Wendland
 
 v.
 
 Superior Court
 
 (1996) 49 Cal.App.4th 44, 51 [56 Cal.Rptr.2d 595], in which the reviewing court held that Probate Code section 1471, subdivision (b) implicitly requires the court to consider whether the interests of the conservatee or proposed conservatee require appointment of counsel when the court is presented with information in a court investigator’s report or other source raising the issue.) Here
 
 *787
 
 the ALJ similarly and correctly implied the right to have the aid of an independent psychiatrist in responding to the petition for involuntary medication as part of the right to counsel and fair hearing.
 

 CDC argues that the United States Supreme Court’s decision in
 
 Washington
 
 v.
 
 Harper
 
 (1990) 494 U.S. 210 [110 S.Ct. 1028, 108 L.Ed.2d 178], sets forth the procedural safeguards required before a state may medicate an inmate with psychotropic drugs against his will. According to CDC, because the
 
 Keyhea
 
 injunction provides for greater safeguards than those set forth in
 
 Washington
 
 v.
 
 Harper,
 
 there are no constitutional grounds for requiring further procedural mechanisms not specifically codified in the
 
 Keyhea
 
 injunction. In
 
 Washington
 
 v.
 
 Harper,
 
 the United States Supreme Court held that a procedure in which a psychiatrist ordered or approved the medication and the inmate was entitled to a hearing before a special committee consisting of a psychiatrist, a psychologist, and the associate superintendent of the treating facility, none of whom could be, at the time of the hearing, involved in the inmate’s treatment or diagnosis,
 
 [3]
 
 comported with the demands of the due process clause. (494 U.S. 210, 215-216, 221-222 [110 S.Ct. 1028, 1036-1037].) The court noted that the extent of a prisoner’s right under the due process clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate’s confinement.
 
 (Id.,
 
 at p. 222 [110 S.Ct. at pp. 1036-1037].) The proper standard for determining the validity of a prison regulation claimed to infringe on an inmate’s constitutional rights is to ask whether the regulation is “ ‘reasonably related to legitimate penological interests.’ ”
 
 (Id.,
 
 at p. 223 [110 S.Ct. at p. 1037].) The court held that “the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate’s medical interest.”
 
 (Id.,
 
 at p. 227 [110 S.Ct. at pp. 1039-1040].) It also held that “. . . an inmate’s interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge.”
 
 (Id.,
 
 at p. 231 [110 S.Ct. at p. 1042].)
 

 Based on
 
 Washington
 
 v.
 
 Harper,
 
 CDC asserts that
 
 Keyhea
 
 adequately balanced the competing interests of personal privacy and penological interests and that the additional time and expense in appointing an independent psychiatrist would place an undue burden on the CDC. The role of the court
 
 *788
 
 under the federal standard is simply deference to professional judgment on issues of incapacity and choice of treatment.
 
 (Keyhea
 
 v.
 
 Rushen, supra,
 
 178 Cal.App.3d 526, 540;
 
 People
 
 v.
 
 Thomas
 
 (1990) 217 Cal.App.3d 1034, 1040, fn. 3 [266 Cal.Rptr. 295]; see also
 
 Rains
 
 v.
 
 Belshé
 
 (1995) 32 Cal.App.4th 157, 180 [38 Cal.Rptr.2d 185].) CDC urges the same role on California courts.
 

 The extent of due process available under California law depends upon the balancing of 1) the private interest to be affected by the official action, 2) the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards, 3) the interest in informing the individuals of the nature, grounds and consequences of the action and allowing them to present their opposition, and 4) “the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.”
 
 (People
 
 v.
 
 Ramirez
 
 (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622].)
 

 The California Legislature, however, through the adoption of the
 
 Keyhea
 
 injunction as the proper procedure to determine competency to refuse involuntary antipsychotic medication, has sanctioned a judicial determination of competency and assistance of counsel. The United States Supreme Court has recognized the uncertainties of psychiatric diagnosis. (See
 
 Addington
 
 v.
 
 Texas
 
 (1979) 441 U.S. 418, 432 [99 S.Ct. 1804, 1812-1813, 60 L.Ed.2d 323, 335].) An inmate’s counsel must be able to respond to the petition before the hearing judge and, through presentation of evidence or cross-examination, ensure that there is an evidentiary basis for the decision made. Without the opportunity to consult with an expert in an unusual case, counsel cannot adequately represent the inmate’s interest. Rather than requesting imposition of a “new procedure” in the
 
 Keyhea
 
 hearing, appellant simply asks that his right to assistance of counsel and to a fair hearing be assured by not restricting his ability to gather and present evidence and to effective cross-examination.
 

 In the context of a conservatorship proceeding, an appellate court has held that the trial court abused its discretion in denying a conservatee’s request for an independent medical examination at county expense because she was represented by pro bono private counsel instead of a public defender within the system the county had established to administratively oversee the delivery of indigent legal services.
 
 (Conservatorship of Scharles
 
 (1991) 233 Cal.App.3d 1334, 1340-1341 [285 Cal.Rptr. 325].) The reviewing court recognized that neither the Probate Code nor the Welfare and Institutions
 
 *789
 
 Code specifically authorized the appointment of defense expert witnesses at county expense, but noted that the Probate Code did require the court to fix a reasonable sum for compensation and expenses of counsel when counsel has been in fact appointed.
 
 (Id.,
 
 at p. 1341; Prob. Code, §§ 1470-1472.) The court also noted that Evidence Code section 730 et seq. empowers the court to appoint experts where necessary at county expense. (233 Cal.App.3d at p. 1341.)
 

 In a criminal case, the right to counsel of an indigent defendant includes the right to investigators and experts necessary for counsel’s preparation of the case. (See
 
 Corenevsky
 
 v.
 
 Superior Court
 
 (1984) 36 Cal.3d 307, 319-320 & fn. 9 [204 Cal.Rptr. 165, 682 P.2d 360]; Pen. Code, § 987.2.) The result is no different even if the proceedings are viewed as essentially civil. The CDC in this case itself relied on an LPS case for renewal of involuntary medication, citing
 
 Conservatorship of Walker
 
 (1989) 206 Cal.App.3d 1572 [254 Cal.Rptr. 552]. The procedural requirements of
 
 Keyhea
 
 are similar to Welfare and Institutions Code provisions of LPS concerning involuntary commitments. (See Welf. & Inst. Code, § 5250 et seq.) Welfare and Institutions Code section 5303.1 authorizes the court to appoint “a psychiatrist or psychologist with forensic skills” to personally examine the person named in the petition.
 

 The ALJ rejected CDC’s argument that appointment of an expert would impose an undue burden on the system. The judge noted that the current procedure is for
 
 Keyhea
 
 counsel appointed by an ALJ to be paid by CDC which has assumed the financial responsibility for bearing the costs of defense counsel that would normally be borne by the county. We reach the same conclusion as did Judge Gibson: “It seems inconceivable that the state would go to all of the trouble to hire appointed counsel for the respondent, pay respondent’s counsel and then refuse to supply him with the necessary resources to adequately prepare a defense to the petition. The net effect of this would be that the only expert heard by the court would be the physician that initiated the
 
 Keyhea
 
 process in the first place. The
 
 Keyhea
 
 hearing as envisioned by the injunction should be an adversarial judicial hearing and not a perfunctory step in the process.”
 

 We do not intend that an ALJ in a
 
 Keyhea
 
 proceeding must appoint a psychiatric expert upon an inmate’s request. We hold only that an ALJ appointed pursuant to Penal Code section 2600 has the authority to do so within the exercise of his or her discretion where necessary to the inmate’s defense to the petition. (See
 
 People
 
 v.
 
 Gaglione
 
 (1994) 26 Cal.App.4th 1291, 1304 [32 Cal.Rptr.2d 169], disapproved on other grounds in
 
 People
 
 v.
 
 *790
 

 Martinez
 
 (1995) 11 Cal.4th 434, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037];
 
 Conservatorship of Scharles, supra,
 
 233 Cal.App.3d 1334, 1342-1343.) That exercise of discretion will not be disturbed unless the record demonstrates the court exceeded the bounds of reason or contravened the uncontradicted evidence, failed to follow the proper procedure in reaching its decision, or applied the wrong legal standard in making its determination.
 
 (Conservator-ship of Scharles, supra,
 
 at p. 1340.)
 

 Both the United States Supreme Court and the California Supreme Court have recognized the right of a person to determine “ . . what shall be done with his [or her] own body . . .
 
 (Hill
 
 v.
 
 National Collegiate Athletic Assn.
 
 (1994) 7 Cal.4th 1, 91 [26 Cal.Rptr.2d 834, 865 P.2d 633]; accord,
 
 Thor
 
 v.
 
 Superior Court, supra,
 
 5 Cal.4th 725, 731.) Moreover, “. . . under California law a competent, informed adult has a fundamental right of self-determination to refuse or demand the withdrawal of medical treatment of any form irrespective of the personal consequences.”
 
 (Thor, supra,
 
 at p. 732.) This right is rendered meaningless if a person cannot adequately and through competent assistance of counsel and necessary experts challenge a psychiatric determination that he or she is incompetent to refuse antipsychotic medication. In a case in which the ALJ deems appointment of an independent psychiatrist necessary upon an inmate’s request, there will be some additional financial burden. That possibility is, as the reviewing court in
 
 Keyhea
 
 recognized, the price of living in a free society. (178 Cal.App.3d 526, 542.)
 

 We reverse the order of the superior court and direct it to enter a new order denying the petition. Each party to bear its own costs.
 

 Gilbert, J., and Yegan, J., concurred.
 

 The petition of appellant Department of Corrections for review by the Supreme Court was denied June 25, 1997.
 

 [1]
 

 Antipsychotic or psychotropic drugs are presently the primary tool for treatment of serious mental disorders, replacing such earlier measures as lobotomy, insulin shock, and
 
 *784
 
 electroshock.
 
 (Keyhea
 
 v.
 
 Rushen, supra,
 
 178 Cal.App.3d 526, 531.) Although they have the potential to minimize or eliminate psychotic symptoms, they also have many serious side effects such as “akathesia (a distressing urge to move), akinesia (a reduced capacity for spontaneity), pseudo-Parkinsonism (causing retarded muscle movements, masked facial expression, body rigidity, tremor, and a shuffling gait), and various other complications such as muscle spasms, blurred vision, dry mouth, sexual dysfunction, drug-induced mental disorders, and, on rare occasions, sudden death. A potentially permanent side effect of long-term exposure, for which there is no cure, is tardive diskenesia, a neurological disorder manifested by involuntary, rhythmic, and grotesque movements of the face, mouth, tongue, jaw, and extremities.”
 
 (Ibid.)
 
 In other words, these substances are not innocuous.
 

 [2]
 

 No person may be presumed incompetent simply because he or she has been treated for a mental disorder, voluntarily or involuntarily. (Welf. & Inst. Code, § 5331.)
 

 [3]
 

 The procedure also included rights of notice, right to attend and present evidence, to cross-examine staff witnesses and to the assistance of a lay adviser not previously involved in his case and who understands the psychiatric issues, and the right of appeal and to seek judicial review. (494 U.S. 210, 215-216 [110 S.Ct. 1028, 1033-1034].)