[No. A080697. First Dist., Div. Four. Sept. 23, 1998.]

DEPARTMENT OF CORRECTIONS, Plaintiff and Appellant, v.
OFFICE OF ADMINISTRATIVE HEARINGS, Defendant and
Respondent;
CHESTER HOLMES, Real Party in Interest and Respondent.

## COUNSEL

Daniel E. Lungren, Attorney General, and Danette E. Valdez, Deputy Attorney General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

William D. Pride for Real Party in Interest and Respondent.

## OPINION

**HANLON, P. J.**—This appeal presents a narrow issue concerning long-term involuntary medication of state prisoners who are alleged to be a danger to others as a result of mental disorder. Under the injunction entered after *Keyhea* v. *Rushen* (1986) 178 Cal.App.3d 526 [223 Cal.Rptr. 746] (hereafter the *Keyhea* injunction), the medical staff of the California Department of Corrections (CDC) cannot administer such medication without an order of authorization from an administrative law judge (ALJ) based on a showing of good cause. Such permission must be renewed periodically, and this case involves the showing required when the medication is to be extended beyond the period permitted by an initial order.

Renewed permission for the involuntary medication of respondent Chester Holmes based on his danger to others was denied for lack of evidence that he had threatened anyone while on medication pursuant to a prior order. Threats after a prior medication order are not a condition for a renewal order under the *Keyhea* injunction; the ALJ in Holmes's case applied a standard for involuntary commitments under the Lanterman-Petris-Short Act (hereafter LPS; Welf. & Inst. Code, § 5000 et seq.) in concluding that a showing of such threats was required. The question is whether the *Keyhea* injunction or LPS is controlling on the point. We conclude that the *Keyhea* injunction controls, and thus that permission for involuntary medication of mentally disordered prisoners based on their danger to others may be renewed without

a showing that they have made any new threats since their medication was last approved.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Procedural Framework*

Penal Code section 2600 provides in relevant part: "A person sentenced to imprisonment in a state prison may during that period of confinement be deprived of such rights, and only such rights, as is reasonably related to legitimate penological interests. [¶] Nothing in this section shall be construed to permit the involuntary administration of psychotropic medication unless the process specified in the [*Keyhea* injunction] . . . has been followed. The judicial hearing for the authorization for the involuntary administration of psychotropic medication provided for in Part III of the injunction shall be conducted by an administrative law judge."

Under the *Keyhea* injunction, "involuntary medication" cannot be administered to a state prisoner for more than three days unless the professional staff of the facility in which the prisoner is incarcerated has analyzed the prisoner's condition and found that the prisoner is, as a result of a mental disorder, "gravely disabled and incompetent to refuse medication or a danger to others, or a danger to self," and the prisoner has been "advised of the need for, but has not been willing to accept medication on a voluntary basis." For purposes of the injunction, "involuntary medication" means "the administration of any psychotropic, psychoactive, or antipsychotic medication or drug to any person by the use of force, discipline, or restraint," or the administration of any such medication or drug to a person who does not give informed consent.

The injunction's definition of "danger to others" is the same as the one set forth in LPS at Welfare and Institutions Code section 5300.[1] Section 5300 provides that a person may be involuntarily committed to a mental health facility for up to 180 days if either: "(a) The person has attempted, inflicted, or made a serious threat of substantial physical harm upon the person of another after having been taken into custody, and while in custody, for evaluation and treatment, and who, as a result of mental disorder [or mental defect], presents a demonstrated danger of inflicting substantial physical harm upon others. [¶] (b) The person had attempted, or inflicted physical harm upon the person of another, that act having resulted in his or her being

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

taken into custody and who presents, as a result of mental disorder *or mental defect*, a demonstrated danger of inflicting substantial physical harm upon others. [¶] (c) The person had made a serious threat of substantial physical harm upon the person of another within seven days of being taken into custody, that threat having at least in part resulted in his or her being taken into custody, and the person presents, as a result of mental disorder *or mental defect*, a demonstrated danger of inflicting substantial physical harm upon others." (§ 5300, subds. (a), (b), and (c), italics added.) The injunction uses this language to define "danger to others," deleting only the italicized words referring to mental "defect[s]." The injunction defines "custody" as "confinement in an inpatient psychiatric unit uninterrupted by any period of release or transfer from such a unit."

Involuntary medication may be extended for another 21 days based on a written certification from medical personnel, and then for an additional 23 days pursuant to a temporary order from an ALJ. To continue the involuntary medication thereafter, the CDC must file a verified petition alleging, among other things: the recommended course of psychiatric treatment which is considered to be medically appropriate; the threat to the health of the prisoner if authorization for the recommended course of treatment is delayed or denied; the available alternatives, if any, to the course of treatment recommended; the efforts made to obtain an informed consent from the prisoner; and references to any incidents that precipitated the filing of the petition. The petition must also allege that the prisoner presents a "danger to others" within the meaning of the injunction, or that one of the other grounds for involuntary medication exists. If, after a hearing, the ALJ finds by clear and convincing evidence that the prisoner is a danger to others as result of a mental disorder, then the ALJ may authorize the prisoner's involuntary medication for up to 180 days.

New petitions are required to extend the period of involuntary medication for additional terms of up to 180 days. The *Keyhea* injunction directs that involuntary medication based on a prisoner's danger to others may not continue for more than 180 days unless all of the procedures required in connection with the initial petition are repeated. The same showing of "danger to others" which was required in the initial petition is also required in renewal petitions under the injunction; the same definition of "dangerousness," based on section 5300, still applies. Thus, in accordance with section 5300, subdivision (a), renewal petitions need only establish that: (1) the prisoner remains a "demonstrated danger" to others as the result of a mental disorder; and (2) the prisoner made a serious threat of substantial physical harm to another at some point after having been taken into custody. No new or "fresh" threats are required.

·Under LPS, in contrast, new threats are required to extend the term of involuntary commitment based on a person's danger to others beyond 180 days. Under section 5304, subdivision (b), if the initial 180-day "postcertification" period authorized under section 5300 is to be extended, it must be shown that: (1) the person remains a "demonstrated danger" to others as the result of a mental disorder; and (2) the person has made a serious threat of substantial physical harm to another *during the postcertification period.* Thus, under LPS, a person who makes no new threats during a 180-day postcertification period can no longer be involuntarily committed.

## B. *Holmes's Case*

Holmes was admitted to the inpatient unit of the California Medical Facility at Vacaville on January 15, 1997, and certified for involuntary medication on January 30, 1997, on the ground that he was a danger to others as a result of a mental disorder. The certification stated that on January 28, 29, and 30, 1997, Holmes had threatened to kill a staff psychiatrist. Holmes had also threatened to "kill the judge & DA involved in his latest trial when released."

In February 1997, the CDC filed a petition to continue Holmes's involuntary medication on the basis of his danger to others, and obtained a temporary order permitting his involuntary medication through the March 6, 1997, hearing on the petition. The psychiatrist's declaration in support of the petition indicated that Holmes had a history of violent crime and mental illness. The declaration stated that the day after Holmes was admitted to the facility he hit a member of the staff. "Due to his unpredictable behavior, [Holmes] had to be placed in restraints." On the morning of January 30, 1997, Holmes "was seen repeatedly running and kicking his door while threatening to kill his doctor. Staff members had to give [him] emergency medication as he refused to calm down." Holmes denied that he was mentally ill and refused medication. On March 6, 1997, an order was issued authorizing continued involuntary medication of Holmes for 90 days.

The CDC filed a petition on May 27, 1997, to renew the authorization for Holmes's involuntary medication. The petition stated that Holmes had been "diagnosed as suffering from delusional disorder, persecutory type, a condition that renders him a danger to others." The supporting declaration acknowledged that Holmes had "improved with the medication, however, the risk is that without the medication, he will deteriorate to the same state again. Mr. Holmes does not understand the severity of his mental illness. He refuses medication and will decompensate without it. It is apparent that but

for the medication, Mr. Holmes would be a danger to others. Continuing involuntary medication is necessary to protect the health of those with whom he comes into contact."

At the May 29, 1997, hearing on the renewal petition, the CDC's psychiatrist opined that Holmes had "poor impulse control. And, off medications, he would clearly be a danger to others." The doctor testified that Holmes had made "numerous threats and gestures towards staff," and that he had used "verbally abusive language on many occasions." However, the doctor knew of no threats Holmes had made since the March 6th order for his continued medication.

The ALJ concluded that the showing of "danger to others" required in the renewal petition was governed by LPS rather than the *Keyhea* injunction, and applied the standard for continued commitments under section 5304, subdivision (b), instead of the provisions of the injunction based on section 5300, in ruling on the petition. Because there was no evidence that Holmes had made threats during the period covered by the order on the initial petition, and new threats were required under section 5304, subdivision (b), the ALJ denied the renewal petition.

The CDC petitioned the superior court to overturn this decision on the ground that the ALJ had applied the wrong standard in ruling on the renewal petition. The court denied the petition and this appeal ensued.

## II. Discussion

■ A threshold consideration in this appeal is that any ruling on the May 1997 petition to renew authority for Holmes's medication is moot at this point. Even if the petition had been granted, another petition would now be required because the *Keyhea* injunction limits the period of involuntary medication on the basis of danger to others to 180 days without a new petition. However, given the short time frames covered by these petitions, the issues they raise are in the class of those " ' " 'capable of repetition, yet evading review' " ' " which may be addressed even though they are moot. (E.g., *Alfredo A.* v. *Superior Court* (1994) 6 Cal.4th 1212, 1219 [26 Cal.Rptr.2d 623, 865 P.2d 56].) The CDC indicates and Holmes evidently concedes that the issue in this case is an important one to the class of prisoners involved and those who work with them. (*Chantiles* v. *Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 921 [45 Cal.Rptr.2d 1].) Accordingly, we will proceed to decide the issue for the guidance of future proceedings before dismissing the appeal as moot.

■ Another preliminary matter is raised by Holmes's argument that an administrative mandamus petition could not be addressed to the superior

court in his case. Holmes reasons that because Penal Code section 2600 (hereafter section 2600) provides for a *"judicial* hearing" before an ALJ in an involuntary medication case, the hearing "remains a Superior Court proceeding as specified in the [*Keyhea*] injunction" and the ALJ's decision is not one of an "inferior tribunal" within the meaning of the administrative mandamus statute. (Code Civ. Proc., § 1094.5, subd. (a).)

In our view, however, the "judicial hearing" to which Penal Code section 2600 refers is simply an administrative adjudication, like any other "in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested," which is reviewable in the first instance by the superior court. (Code Civ. Proc., § 1094.5, subd. (a).) As we read section 2600, the ALJ hearings are intended to relieve superior courts of the burden of *Keyhea* proceedings, but not to divest them in the *Keyhea* context of their normal jurisdiction to review ALJ determinations. This conclusion is consistent with the procedure reported in *Department of Corrections* v. *Office of Admin. Hearings* (1997) 53 Cal.App.4th 780, 784 [61 Cal.Rptr.2d 903], where an ALJ's order in a *Keyhea* proceeding was reviewed by writ of mandate to the superior court. Whether the ALJ "proceeded in the manner required by law" in this case (Code Civ. Proc., § 1094.5, subd. (b)) was properly raised by the CDC's mandate petition to the superior court, and is properly before us on appeal from the judgment denying that petition.

■ The ALJ required a showing, not called for under the *Keyhea* injunction, of new threats by the prisoner, based on the decision in *Department of Corrections* v. *Office of Admin. Hearings, supra,* 53 Cal.App.4th 780 (hereafter *Anthony*). *Anthony* held that an ALJ has discretion to order appointment of a psychiatrist to assist the prisoner and his attorney at a *Keyhea* hearing, even though such authority is not expressly conferred in the *Keyhea* injunction. (*Id.* at p. 782.) The court found this power implicit in the injunction's provisions for a hearing and the assistance of counsel, reasoning that "[w]ithout the opportunity to consult with an expert in an unusual case, counsel cannot adequately represent the inmate's interest. Rather than requesting imposition of a 'new procedure' in the *Keyhea* hearing, appellant simply asks that his right to assistance of counsel and to a fair hearing be assured by not restricting his ability to gather and present evidence and to effective cross-examination." (*Id.* at p. 788.) The court noted that the "procedural requirements" of the *Keyhea* injunction were similar to those for involuntary commitments under LPS, and that LPS authorized appointment of a psychiatrist or psychologist to examine and testify about the person to be committed. (*Id.* at p. 789.)

*Anthony* dealt only with *procedural* requirements under the *Keyhea* injunction, and not "the *substantive* issue [of] what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will." (*Washington* v. *Harper* 1990 494 U.S. 210, 220 [110 S.Ct. 1028, 1036, 108 L.Ed.2d 178], italics added.) Further, the *Keyhea* injunction was silent on the point *Anthony* considered. *Anthony* did not suggest that all procedures for involuntary commitments must be imported into the *Keyhea* injunction, much less that all substantive standards for involuntary commitments must be applied. *Anthony* stands for the more limited proposition that a procedural right may be read into the *Keyhea* injunction, by analogy to commitment proceedings under LPS, where the injunction is silent and the right is necessary to the effective exercise of others the injunction expressly provides.

The *Keyhea* injunction is not silent on the matter at issue in Holmes's case, and that issue—the showing required for involuntary medication—is a matter of substance rather than procedure. Sections I(4)(a), III(F)(b) and III(I)(2) of the injunction, read together, expressly provide that authority for involuntary medication of a prisoner on the ground of danger to others may be renewed beyond 180 days based on finding that the prisoner has made a serious threat of substantial physical harm to another "after having been taken into custody." Section III(I)(2) states that a "new petition" must be filed after 180 days and the prisoner must be "provided with the procedural protections specified in paragraphs III A to III H." The same finding of "danger to others" under section III(F)(b) is required, and the same definition of "danger to others" in section I(4)(a), referring simply to threats "after having been taken into custody," still applies.

This standard for renewed involuntary medication under the *Keyhea* injunction conflicts, as we have noted, with the LPS standard for renewed involuntary commitments which requires a showing of new threats during the preceding 180 days. (§ 5304, subd. (b).) Where, as here, a substantive provision of the *Keyhea* injunction conflicts with a provision for involuntary commitments under LPS, we conclude that the injunction must prevail.[2]

This conclusion is compelled by Penal Code section 2600. By specifically referring to the *Keyhea* injunction in section 2600, the Legislature has expressly endorsed the injunction's standards for involuntary medication. If

---

[2]In view of this conclusion, we need not address the CDC's argument that authority for Holmes's medication could have been continued even under the standards of LPS. (See *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1576-1577 [254 Cal.Rptr. 552] [person who did not believe he was ill or needed medication remained gravely disabled].)

the Legislature wishes to change those standards and adopt the one Holmes proposes then that is its prerogative.

The ALJ erred in denying the CDC's petition on the sole ground that Holmes had made no threats since the last order for his medication.

### III.  DISPOSITION

The appeal is dismissed as moot.

Poché, J., and McGuiness, J., concurred.