[No. B087115. Second Dist., Div. Three. Mar. 30, 1995.]

MARCY A. SHAFFER, Petitioner, v
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JEREMY SIMMS, Real Party in Interest.

994

COUNSEL

Gibson, Dunn & Crutcher, Charles S. Battles, Bradley E. Pomerance, Lewis, D'Amato, Brisbois & Bisgaard, David B. Parker and Jayesh Patel for Petitioner.

No appearance for Respondent.

Gradstein, Luskin & Van Dalsem and Henry D. Gradstein for Real Party in Interest.

## OPINION

**CROSKEY, J.**—Petitioner Marcy A. Shaffer (Shaffer), who is not a party to the underlying malpractice action, petitions this court for a writ of mandate directing the respondent trial court to vacate its order of August 12, 1994, ordering Shaffer to disclose the hourly rate she was paid as a contract staff attorney by the law firm of Gibson, Dunn & Crutcher (defendant) while working on defendant's representation of the real party in interest, Jeremy Simms (Simms).[1]

The question of the hourly rate paid to Shaffer arose during her deposition taken by Simms in connection with his malpractice action against defendant in which he alleges, inter alia, that he was charged unconscionable attorney fees. Defendant had objected to Simms's questions seeking to determine the hourly rate defendant had paid Shaffer. When Shaffer, relying on such objection, refused to divulge the information during the deposition, Simms

---

[1]Shaffer also filed a notice of appeal from the trial court's order. We have dismissed the appeal as the trial court's order was nonappealable.

filed a motion to compel her to answer. The trial court referred the matter to a referee who recommended that Shaffer be ordered to answer the question. The trial court accepted the referee's recommendation and Shaffer petitioned this court for writ of mandamus.

We issued an alternative writ and heard arguments on the matter. Later, we vacated our submission of the matter and requested additional briefing from the parties. Having considered all of the parties' arguments, we find that (1) we need not consider Shaffer's claim that disclosure of the hourly rate paid to her would be an improper infringement on her constitutional right to privacy because (2) disclosure is unwarranted since the hourly rate at which defendant compensated Shaffer is simply a part of defendant's costs and is not relevant to the question of whether plaintiff was charged an unconscionable fee by defendant. We therefore grant Shaffer's petition for the requested writ.

## BACKGROUND OF THE CASE[2]

On June 13, 1989, Simms signed a retainer agreement with defendant for representation in connection with his personal and business dealings with a Mr. Alan Robbins (Robbins). Specifically, Simms sought advice regarding a partial settlement of disputes he had with Robbins. The retainer agreement reflects the understanding between Simms and the defendant that defendant might be called upon to represent Simms in litigation with Robbins.[3] In fact, litigation did ensue and defendant represented Simms into 1991 in connection with his dealings with Robbins (the Robbins matters). Litigation between Simms and Robbins continued thereafter.

In January 1993, Simms filed this action against defendant. The operative complaint (complaint) alleges causes of action for breach of contract, fraud, breach of fiduciary duties, and professional negligence. In his extensive complaint, Simms alleged that during an 18-month period (July 1989

---

[2]Simms has filed no return (demurrer or verified answer) to Shaffer's petition. (Cal. Rules of Court, rule 56(e).) Rather, he filed only a memorandum of points and authorities and a declaration of his attorney in which the attorney verified the authenticity of certain documents. Because they have not properly been denied, the *facts* alleged in Shaffer's petition are accepted as true and any "facts" set out in Simms's points and authorities will be ignored. (*Binder* v. *Superior Court* (1987) 196 Cal.App.3d 893, 896, fn. 1 [242 Cal.Rptr. 231]; *Dr. Ing H.C.F. Porsche A.G.* v. *Superior Court* (1981) 123 Cal.App.3d 755, 758, fn. 2 [177 Cal.Rptr. 155].) Additionally, there is another reason for ignoring "facts" asserted in Simms's papers— they are not supported by appropriate references to the record.

[3]Specifically, the agreement provided that the attorney fees to be paid by Simms were to be calculated on the basis of the time expended by the individuals who performed services on the Robbins litigation, multiplied by the hourly rates generally in effect for those individuals as of the time they performed the services.

through Dec. 1990) defendant billed him $2,018,067.63 which he paid. Approximately $51,000 of that amount was for "other work"; the rest was billed to Simms in connection with the Robbins matters. Thereafter, although litigation was stayed, defendant billed Simms additional moneys, in the approximate amount of $250,700. Shaffer's work on the Robbins matters was billed to Simms at rates ranging from $215 to $250 per hour.

While taking Shaffer's deposition, Simms sought to discover how much money defendant had paid her for her work on his file. When he asked her to disclose that amount, defendant's attorney, who was also representing Shaffer at her deposition, objected on the ground that the information sought was irrelevant and might be an invasion of Shaffer's privacy. He instructed Shaffer not to answer the question and she obeyed the instruction. Thereafter, Simms brought a motion to compel her answer to the question, charging that the information was relevant because he is entitled to know if the rate he was charged for her services "was unconscionable under the circumstances."[4] He also contended that whatever privacy right she had in that information is outweighed by his right to know the hourly rate since he was paying

---

[4]In support of his motion to compel an answer regarding the hourly rate paid to Shaffer, Simms lodged with the trial court the transcript of Shaffer's entire deposition. However, in his moving papers, the only reference which Simms made to that transcript was to the specific pages which contain the question, objection and discussion between his attorney, Shaffer and her attorney regarding the challenged inquiry into Shaffer's hourly rate. Now, in the instant petition proceeding, Shaffer contends that because Simms did not specifically call the trial court's attention to *any other part* of her deposition transcript, Simms may not now rely on other portions of it in support of his opposition to her petition. As support for her position, Shaffer cites us to *Mission Imports, Inc.* v. *Superior Court* (1982) 31 Cal.3d 921 [184 Cal.Rptr. 296, 647 P.2d 1075].

In *Mission*, the petitioner for a writ of mandate moved to strike certain portions of the respondent's answer to the writ. The portions of the answer challenged by the petitioner set forth facts relating to such things as the sophistication of the parties to a contract and the existence of an alleged oral contract. The *Mission* court struck the challenged portions, saying: "Since the propriety of the trial court's ruling must be judged solely on the basis of the record before that court [citation], and the challenged items *were not brought to the attention of that court*, the motion to strike is granted." (31 Cal.3d at p. 927, fn. 5, italics added.)

In her motion to strike, Shaffer has seized upon the emphasized portion of the quoted language from *Mission* and now asserts that because Simms did not call the trial court's attention to anything in her deposition but that specific portion where he asked her to disclose her hourly salary, this court cannot consider anything else from that deposition. We disagree with this narrow reading of the *Mission* court's analysis. To begin with, courts routinely read more of a transcript or exhibit than the portions to which they are cited by the parties. Additionally, the case which the *Mission* court cited to support its holding, *Sequoia Pine Mills, Inc.* v. *Superior Court* (1968) 258 Cal.App.2d 65 [65 Cal.Rptr. 353], spoke in broader terms than what Shaffer asserts is the proper rule for reviewing courts; the *Sequoia Pine Mills* court stated: "Generally speaking, an appellate court is bound by the condition *of the record* as it existed in the trial court at the time of the ruling that is questioned." (*Id.* at p. 69, italics added.) In turn, *Sequoia Pine Mills, Inc.* refers to language from *People* v. *Croft* (1955) 134 Cal.App.2d 800 [286 P.2d 479] "No facts outside *the record* . . . can be considered on appeal. [Citations.]"

for her time. He noted he was only seeking her hourly rate, not her total salary, her net worth, or other private financial information. Simms requested sanctions against Shaffer and her attorney, arguing that the refusal to answer the question was without substantial justification.

At her deposition, Shaffer testified that she did not have her own office or secretary while working on Simms's matters. Rather, she used offices which were empty until someone else needed them, and at one point worked in the library. To get her time entered and to get "things copied," Shaffer used the secretaries who were available, but apparently did most of her own typing. Shaffer stated that from 1980 to some part of 1983, she had worked as a full-time associate for defendant. When she returned to work for defendant as a contract staff attorney, it was agreed that she would do research, analysis and writing because she enjoyed those tasks. Simms was charged for approximately 1,800 hours of Shaffer's time for work on the Robbins matters. (Apparently, this was about 19 percent of all time billed by defendant on those matters.)

The trial court sent Simms's motion to compel to a discovery referee who recommended that Shaffer be ordered to answer the question regarding the hourly rate defendant paid her and to answer follow-up questions dealing with the compensation rate, noting that Shaffer's responses could be subject to a protective order. The referee also recommended sanctions be imposed in favor of Simms in the amount he requested ($1,100), saying Shaffer's refusal to answer was without substantial justification and the matter could have been resolved without the necessity of the motion.

Shaffer and defendant filed written objections to the referee's report. A hearing was had on the objections and by minute order dated August 12, 1994, the trial court approved the referee's report, with the exception that it lowered the sanctions to $900. By minute order dated October 21, 1994, the trial court modified its August 12 order by adding the following language: "The court has found that, under the operative pleadings, the need to determine whether or not unconscionable charges as to fees and hours was [sic] passed on to and billed to Plaintiff for Shaffer's work for Gibson, Dunn & Crutcher (G, D & C) on balance outweighs Shaffer's interest in privacy. Shaffer had acted as fiduciary to G, D & C. [¶] Information sought pertains solely to Shaffer's hourly charge—not financial records—in considering the nature of the intrusion."

(*Id.* at p. 804, italics added.) Here, the trial court had before it the entirety of Shaffer's deposition transcript. Thus, we reject Shaffer's assertion that the only portion of that transcript to which this court can refer is the single place which prompted Simms's motion to compel.

## Issue Raised by the Petition

In this proceeding, Shaffer asks us to determine whether her constitutional right to privacy has been violated by the trial court's order requiring disclosure of the hourly rate she was paid by the defendant law firm. That issue necessarily presents the threshold question of relevancy and requires us to first consider whether a law firm's costs or margin of profit is in fact relevant to a claim that the firm has charged an unconscionable attorney fee. This appears to be an issue of first impression in California.

## Discussion

### 1. *The Interrelation of Privacy Rights and Discovery*

A party may obtain discovery regarding unprivileged matters "that [are] relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017, subd. (a).) ■ However, when evidence sought to be discovered impacts on a person's constitutional right to privacy (Cal. Const., art. I, § 1), limited protections come into play for that person. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr 553, 542 P.2d 977].) The protections extend to both a a person's personal and financial matters. (*Ibid.*) In ruling on discovery motions, the court must balance competing rights—the right of a litigant to discover *relevant* facts and the right of an individual to "maintain reasonable privacy." (*Id.* at p. 657.)

■ Here, Shaffer contends that the amount of money paid to her by defendant is not relevant to the subject matter of this case. Because we can resolve this case on the issue of relevancy we have no need to consider Shaffer's privacy claim.

In his complaint, Simms alleged that the defendant had breached "The obligation of an attorney, under California Rules of Professional Conduct [of the State Bar], Rule 4-200, not to 'charge or collect an . . . unconscionable fee.'" He further alleged that the defendant had breached a promise to represent Simms "competently." Simms asserts that in order to prove such allegations he is entitled to learn what hourly rate was paid to Shaffer by the defendant. In other words, it is his position that the issue of whether an attorney has charged an unconscionable fee justifies an inquiry into the attorney's cost of doing business and margin of profit. We disagree.

### 2. *Unconscionability of Fees for Legal Services*

In the context of the enforcement of contracts generally, the "unconscionable" agreement is condemned by Civil Code section 1670.5[5] and usually involves a contractual provision which operates in a harsh and one-sided manner without any justification. That code section was enacted in 1979, but before that, California courts had "long recognized 'unconscionability' as a viable common law doctrine even in the absence of specific statutory authority. [Citations.]" (*Carboni* v. *Arrospide* (1991) 2 Cal.App.4th 76, 81 [2 Cal.Rptr.2d 845].) Unconscionability has both a "procedural" and "substantive" aspect. The former involves (1) "oppression," which refers to an inequality of bargaining power giving no meaningful choice to the weaker party or (2) the "surprise" of a contractual term hidden in a printed or complex document. (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114].)

" 'Substantive' unconscionability, on the other hand, refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made. [Citation.] Presumably, both procedural and substantive unconscionability must be present before a contract or clause will be held unenforceable. However, there is a sliding scale relationship between the two concepts: the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause. [Citations.]" (*Carboni* v. *Arrospide, supra*, 2 Cal.App.4th at p. 83.) We see no reason not to apply these definitional principles to the claim of an unconscionable legal fee. However, we are also assisted by rule 4-200 of the Rules of Professional Conduct of the State Bar of California (Rule 4-200).

Rule 4-200 prohibits members of the bar from contracting for, charging, or collecting unconscionable fees and it specifically describes how it is to be determined that such a fee has been charged.[6] There is nothing in Rule 4-200 to suggest that defendant's profit margin is in any way relevant to the issue.

---

[5]Civil Code section 1670.5 provides: "(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. [¶] (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

[6]Rule 4-200, entitled "Fees for Legal Services," states: "(A) A member shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee.

"(B) Unconscionability of a fee shall be determined on the basis of all the facts and circumstances *existing at the time the agreement is entered into* except where the parties

Indeed, as Shaffer argues, if a law firm's profit margin were relevant to the analysis of the conscionability of its fees, a veritable pandora's box of questions and problems would be opened. For example, how are we to define "profit margin." Is it gross revenues minus total costs? If so, are those numbers measured on an accrual basis, a cost basis, or some other basis? Are they to be evaluated in absolute dollar terms or in terms of a percentage of its costs. Is every single item of cost incurred by a firm (e.g., both capital expenditures and costs of operations) to be part of the calculation? What special rules must be adopted in order to avoid punishing law firm efficiency or a firm's skill or luck in negotiating favorable leases or vendor contracts? Is every single item of revenue received by a firm to be included in the calculation (e.g., what about investment income)? How will the quality of the legal services be incorporated into the analysis? What about other intangibles, like professional reputation and goodwill? Will the firm be forced to disclose the compensation it pays to every lawyer and staff member? Will it be forced to disclose the amounts it pays for office space, equipment, supplies, furniture or utilities? Will it be forced to disclose the individuals or entities to whom it makes these payments? What portion of the attorney's overall costs of doing business should be allocated to the particular case in which the fee dispute arises?

These are not idle questions or merely theoretical problems. They will most certainly arise if a client is entitled to measure conscionability of an attorney fee by the attorney's margin of profit. An examination of the factors by which unconscionability is to be measured or defined, as set out in Rule 4-200, provides no justification for such a result. None of the three most relevant factors (subd. (B)(1), (8), and (11)) remotely refer to an attorney's profit or suggest that it should be considered in any way.

---

contemplate that the fee will be affected by later events. Among the factors to be considered, where appropriate, in determining the conscionability of a fee are the following:

"(1) The amount of the fee in proportion to the value of the services performed.

"(2) The relative sophistication of the member and the client.

"(3) The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

"(4) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the member.

"(5) The amount involved and the results obtained.

"(6) The time limitations imposed by the client or by the circumstances.

"(7) The nature and length of the professional relationship with the client.

"(8) The experience, reputation, and ability of the member or members performing the services.

"(9) Whether the fee is fixed or contingent.

"(10) The time and labor required.

"(11) The informed consent of the client to the fee."

What *is* relevant to the issue of conscionability is the fee which plaintiff paid for Shaffer's services, vis-à-vis the factors listed in Rule 4-200, specifically factors (B)(1), (8) and (11). In other words, did plaintiff get what he paid for; did he get services from Shaffer which were worth, *as measured in the market place*, the $215 to $250 per hour which defendant charged him for her work? This question can be answered by analyzing the quality and necessity of her services and then comparing their cost with what would be charged for such services by other attorneys in the community who have experience and ability similar to Shaffer's. If, in the legal marketplace, attorneys would have charged fees which are not disproportionaly dissimilar to those charged by defendant for those services, then it is difficult to see how such fees could be considered unconscionable under Rule 4-200.

In rejecting a "cost-plus" approach to the determination of an award of fees to be made in public interest litigation, the court, in *Copeland* v. *Marshall* (1980) 641 F.2d 880 [205 App.D.C. 390], stated, "The reasonable hourly rate is that prevailing in the community for similar work. As we noted a reasonable hourly rate is the product of a multiplicity of factors. . . . [Among them are:] the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case. [Citation.]" (*Id.*, at p. 892.) The *Copeland* court did not list attorneys' salaries or other overhead costs as an appropriate element in fee determination; indeed, the court expressly rejected that suggestion. What the court did do was observe that consideration of attorneys' salaries would also require inquiry into all overhead expenses, together with a determination of the extent to which those costs could be attributable to the particular piece of litigation at hand. The court concluded that the necessity of answering these questions "creates the specter of a monumental inquiry on an issue wholly ancillary to the substance of the lawsuit." (*Id.*, at p. 896.)

The court, in *Margolin* v. *Regional Planning Com.* (1982) 134 Cal.App.3d 999 [185 Cal.Rptr. 145], expressed a similar view in rejecting a contention that the salaries paid by a law firm to its associates was in any way relevant to an award of reasonable attorney fees sought by the law firm. The court stated, "We are also persuaded that the cost of providing legal services is not relevant to a determination of their value. Attorneys' fees for hours spent in legal research, for example, should be awarded based on the quality of the research done and the benefit it produced for the client and the community, not on the cost of heating and lighting the office where the work was performed. [¶] California courts have consistently held that a computation of time spent on a case and *the reasonable value of that time* is fundamental to a determination of an appropriate attorneys' fee award. [Citations.] *Consideration of the cost of providing services has no place in that formula.*" (*Id.*, at pp. 1004-1005, italics added.)

While these comments were made in the context of an award of reasonable attorney fees in public interest cases, the point is the same. A determination of a "reasonable" attorney fee based on costs is neither appropriate or practical. A fortiori, the determination of a claimed "unconscionable" fee cannot properly be based upon either an attorney's costs or profit margin.

Thus, we reject plaintiff's position that defendant's "margin of profit" on Shaffer's work is a factor which should be analyzed under Rule 4-200. While we recognize that the factors actually listed in Rule 4-200 do not appear to be the only ones which a court can consider in determining the conscionability of legal fees billed to a client, the "margin of profit" is not an appropriate factor in any event. Examination of profits would penalize law firms which are able to produce at costs substantially less than their competitors. It would unfairly penalize the efficient and reward the inefficient. Additionally, it would place courts in the position of supervising attorney fees on the basis of individual profit margins instead of the going market price for given services. This would be an unwarranted burden and bad public policy.

## DISPOSITION

The alternative writ is discharged. Let a peremptory writ of mandate issue, compelling the trial court to vacate its order of August 12, 1994, as amended by its order of October 21, 1994, and issue a new and different order disapproving the discovery referee's report and denying Simms's motion to compel discovery of the hourly rate paid to Shaffer by defendant.

Klein, P. J., and Aldrich, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 15, 1995.