[No. B138076. Second Dist., Div. Four. Dec. 19, 2000.]

BEN PINEDO, Plaintiff and Respondent, v.
PREMIUM TOBACCO STORES, INC., et al., Defendants and Appellants.

**COUNSEL**

Aiken, Kramer & Cummings, Matthew F. Graham and Tammy A. Brown for Defendants and Appellants.

Danz & Gerber, Stephen F. Danz, Karl Gerber and Joshua A. Rosenthal for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—In *Armendariz v. Foundation Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), our

Supreme Court reversed an order compelling arbitration in a wrongful termination action brought under the California Fair Employment Housing Act (FEHA) (Gov. Code, § 12900 et seq.). It concluded that the arbitration provision relied upon was unconscionable and unenforceable. This appeal presents the same issue focused on in *Armendariz*: whether the so-called agreement to arbitrate is so one-sided that it should not be enforced. We conclude in the affirmative and affirm the order of the trial court denying compelled arbitration.

## STATEMENT OF FACTS

On August 6, 1999, plaintiff, Ben Pinedo, filed a complaint for damages against named defendants Premium Tobacco Stores, Inc. (Premium), Cigarettes Cheaper! (Cigarettes) and Jim Tapp (collectively, defendants). The complaint alleges that beginning on August 3, 1996, and through May 7, 1999, plaintiff was employed by Premium, a subsidiary of Cigarettes, as a driver and deliveryman. In December 1997, Tapp became the manager at two locations for Premium, locations plaintiff had occasion to service. From the time that Tapp became a manager at those two locations, until plaintiff was forced to quit his employment, plaintiff was subjected to workplace harassment and discrimination because of his national origin. Based on this foundation, four causes of action were alleged: two based upon violation of the FEHA, one for constructive wrongful discharge, and one for intentional infliction of emotional distress.

On September 17, 1999, defendants filed a petition to compel arbitration. Plaintiff responded by filing a first amended complaint which added one additional cause of action titled "Race and National Origin Discrimination in Violation of Title VII."

Defendants filed a new petition to compel arbitration. Attached to the petition is a document titled "Employment Agreement" dated March 3, 1997, between Premium and plaintiff. The applicable portion of the agreement is paragraph 5, which, as pertinent, provides:

"5. Arbitration: Any controversy or dispute arising out of or relating to this Agreement or relating to Employee's employment by Employer including any changes in position, conditions of employment or pay, or the end of employment thereof . . . shall be settled by arbitration. . . . Employee recognizes that by agreeing to arbitrate all disputes, it is knowingly and willingly waiving its right to a trial by jury *and waiving any other statutory remedy it might have concerning any such dispute including, but not limited to, disputes concerning claims for harassment or discrimination due to race, religion, sex or age.* The arbitration *shall be in Oakland, California* before one arbitrator. . . . [¶] . . . [¶]

"Any decision or award by said arbitrator shall be binding and enforceable in any Superior Court in California. Employee specifically agrees and accepts that *any award on account of the end of employment shall be specifically limited to reinstatement and/or back pay. Back pay shall be defined as the compensation Employee would have received through the number of hours worked by Employee during the 6 month period preceding the end of employment* . . . less all moneys received by employee by virtue of unemployment insurance and/or other employment. *All arbitration fees, including administrative fees and fees of the arbitrator, shall be paid by Employee.* The prevailing party in such arbitration shall be entitled to recover all reasonable out-of-pocket costs and disbursements, as well as any and all charges which may be made for the cost of the arbitration and the fees of the arbitrators but not attorney fees. . . . Employee acknowledges the existence of Employer's grievance procedure for internal resolution of all disputes regarding employment and all rights and duties of the employment relationship. Employee agrees to utilize this grievance procedure with respect to any disputes regarding employment." (Italics added.)

Plaintiff filed opposition to the petition supported by his own declaration, the pertinent portion of which states: "I would suffer an economic hardship if I was required to arbitrate this matter. I have not had a full time job since I was constructively terminated by Cigarettes Cheaper. I have had personal monthly income of $460 unemployment compensation and expenses of approximately $1,500.00, with nothing left over for savings. I also have a wife and three children who I have to support. I have had to borrow money from family members since my termination and have not been able to pay back any of those loans. I have depleted savings I had in the past 6 months since I have been unemployed. I have no savings which would allow me to pay arbitrators costs in the range of $200-400 an hour or tens of thousands of dollars in total. Cigarettes Cheaper has never offered to pay any of the costs of the arbitration and have refused to pay any costs of the arbitration."

 The petition was denied on November 23, 1999. Notice of appeal was timely filed on December 22, 1999.[1]

### DISCUSSION

In *Armendariz,* two employees of Foundation Health Psychcare Services, Inc. (Foundation Health), brought an action for wrongful termination alleging violation of the FEHA and three additional causes of action based on tort and contract theories of recovery. The employees had signed an employment

---

[1]An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a); *Mayhew v. Benninghoff* (1997) 53 Cal.App.4th 1365, 1369 [62 Cal.Rptr.2d 27].).

agreement which contained the following arbitration provision: " 'I agree as a condition of my employment, that in the event my employment is terminated, and I contend that such termination was wrongful or otherwise in violation of the conditions of employment or was in violation of any express or implied condition, term or covenant of employment, whether founded in fact or in law, including but not limited to the covenant of good faith and fair dealing, or otherwise in violation of any of my rights, I and Employer agree to submit any such matter to binding arbitration pursuant to the provisions of title 9 of Part III of the California Code of Civil Procedure, commencing at section 1280 et seq. or any successor or replacement statutes. I and Employer further expressly agree that in any such arbitration, my exclusive remedies for violation of the terms, conditions or covenants of employment shall be limited to a sum equal to the wages I would have earned from the date of any discharge until the date of the arbitration award. I understand that I shall not be entitled to any other remedy, at law or in equity, including but not limited to reinstatement and/or injunctive relief.' " (*Armendariz, supra*, 24 Cal.4th at p. 92.)

Foundation Health petitioned for an order compelling arbitration of the litigation. The trial court concluded that the arbitration provision was a contract of adhesion and was so one-sided that it shocked the conscience. It refused to enforce the provision. The Court of Appeal agreed with the trial court that the agreement was a contract of adhesion and that the limitation of damages provision was against public policy, but, it concluded that the unconscionable portions of the agreement could be segregated from the remainder of the agreement and that it should be enforced. (*Armendariz, supra*, 24 Cal.4th at pp. 93-94.) The Supreme Court granted review.

In measuring the agreement in relation to FEHA claims, the court looked at four specific areas: (1) the provision for limitation of remedies; (2) whether discovery rights may be impacted; (3) the potential scope of judicial review; and (4) the obligation of the employee to pay an equal share of the costs and fees of the arbitration. Based on the facts presented, it concluded that the issues of discovery and judicial review were not impediments to arbitration. (*Armendariz, supra*, 24 Cal.4th at pp. 104-107.)

Turning to the limitation on remedies, the court concluded that the limitation violated public policy: "The employees claim that the agreement compels them to arbitrate statutory claims without affording the full range of statutory remedies, including punitive damages and attorney fees to a prevailing plaintiff, available under the FEHA. [Citations.] [¶] The employer does not contest that the damages limitation would be unlawful if applied to statutory claims, but instead contends that the limitation applies only to contract claims, pointing to the language in the penultimate sentence that

refers to 'my exclusive remedy for violation *of the terms, conditions or covenants of employment . . . .*' Both the trial court and the Court of Appeal correctly rejected this interpretation. While the above quoted language is susceptible to the employer's interpretation, the final sentence—'I understand that I shall not be entitled to any other remedy . . .'—makes clear that the damages limitation was all-encompassing. We conclude that the damages limitation is contrary to public policy and unlawful." (*Armendariz, supra,* 24 Cal.4th at pp. 103-104, italics in original.)

█ The court also concluded that requiring the plaintiff to share the costs of arbitration was unreasonable: "Accordingly, consistent with the majority of jurisdictions to consider this issue, we conclude that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer." (*Armendariz, supra,* 24 Cal.4th at pp. 110-111, italics in original.)

The court then turned to the issue of whether the arbitration agreement was unconscionable. It first concluded that the agreement was one of adhesion: "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement. While arbitration may have its advantages in terms of greater expedition, informality, and lower cost, it also has, from the employee's point of view, potential disadvantages: waiver of a right to a jury trial, limited discovery, and limited judicial review. Various studies show that arbitration is advantageous to employers not only because it reduces the costs of litigation, but also because it reduces the size of the award that an employee is likely to get, particularly if the employer is a 'repeat player' in the arbitration system. [Citation.] It is perhaps for this reason that it is almost invariably the employer who seeks to compel arbitration. [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 115.)

The court then turned to mutuality of application of the arbitration provision: "We conclude that *Stirlen* [*v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519 [60 Cal.Rptr.2d 138]] and *Kinney* [*v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322 [83 Cal.Rptr.2d 348]] are correct in requiring this 'modicum of bilaterality' in an arbitration agreement. Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly

one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' As has been recognized ' "unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." ' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at pp. 117-118.) In measuring the agreement before it, the court concluded that it violated this principle: "[W]e note the arbitration agreement was limited in scope to employee claims regarding wrongful termination. Although it did not expressly authorize litigation of the employer's claims against the employee, as was the case in *Stirlen* and *Kinney,* such was the clear implication of the agreement. Obviously, the lack of mutuality can be manifested as much by what the agreement does not provide as by what it does. [Citation.]" (*Id.* at p. 120.) The court also noted that "[t]he unconscionable one-sidedness of the arbitration agreement is compounded in this case by the fact that it does not permit the full recovery of damages for employees, while placing no such restriction on the employer. Even if the limitation on FEHA damages is severed as contrary to public policy, the arbitration clause in the present case still does not permit full recovery of ordinary contract damages." (*Id.* at p. 121.)

Finally, the court turned to whether the various unconscionable portions of the agreement could be severed so that the arbitration agreement could be enforced. It concluded in the negative: "In this case, two factors weigh against severance of the unlawful provisions. First, the arbitration agreement contains more than one unlawful provision; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause. Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage. . . . [¶] Second, in the case of the agreement's lack of mutuality, such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms. Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute. Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent, limited authority to reform contracts. [Citations.] Because a court is unable to cure this unconscionability through severance or restriction, and is not permitted to cure it through reformation and augmentation, it must void the entire agreement. [Citation.]" (*Armendariz, supra,* 24 Cal.4th at pp. 124-125.)

■ Turning to the instant arbitration provision, we conclude that it is at least equally unconscionable to the one presented in *Armendariz*. This agreement limits the recovery the employee may obtain to the amount of wages paid to the employee for the last six months prior to termination *less* any unemployment benefits or pay from another job. It also precludes recovery based upon statutory claims, including claims "for harassment or discrimination due to race, religion, sex or age." In other words, it precludes recovery of any and all damages contemplated within the FEHA, including recovery of attorney fees. The cost provision is potentially more oppressive than in *Armendariz*: it requires that *all costs* initially be borne by the employee. The employee is further disadvantaged here by being required to arbitrate in Oakland, California. The agreement is also inherently one-sided: it addresses only claims involving terms of employment described as claims based on "changes in position, conditions of employment or pay, or the end of employment." These are claims which would normally be brought by the employee against the employer. The limitation on damages applies only to damages awarded in favor of the employee, not to damages claimed by the employer.

As in *Armendariz*, we conclude that "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra*, 24 Cal.4th at p. 124.) The trial court did not err in refusing to order this matter to arbitration.

## DISPOSITION

The order denying arbitration is affirmed. Costs are awarded to respondent. Respondent's request for sanctions is denied.

Vogel (C. S.), P. J., and Epstein, J., concurred.