105 Cal.Rptr.2d 21 (2001)
87 Cal.App.4th 599
Alice PICHLY et al., Plaintiffs and Respondents,
v.
NORTECH WASTE LLC et al., Defendants and Appellants.
No. C029714.
Court of Appeal, Third District.
March 2, 2001.
As Modified on Denial of Rehearing April 2, 2001.
Review Denied June 20, 2001.[*]
*24 Aiken, Kramer & Cummings, Inc., Matthew F. Graham, Oakland, and Tammy A. Brown, for Defendants and Appellants.
Edson, Laplante & Spinelli, Domenic D. Spinelli, Gregory J. Fisher, and Lynette T. Brannan, for Plaintiffs and Respondents.
NICHOLSON, J.
Plaintiffs Alice Pichly and Thomas Keshishian sued Nortech Waste LLC as a result of their employment and termination at Nortech. Pursuant to an arbitration clause in the employment contract, Nortech petitioned to compel arbitration, but the trial court denied the petition, finding it both procedurally and substantively unconscionable. The matter was argued before this court on June 28, 1999. In an opinion issued on July 9, 1999, we reversed, holding that the arbitration clause is not unconscionable and, therefore, must be enforced.
The California Supreme Court granted the plaintiffs' petition for review. After deciding Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (hereafter Armendariz ), the Supreme Court transferred this case to this court with directions to vacate our decision and to reconsider in light of Armendariz. Having done so, we again reverse the order denying Nortech's petition to compel arbitration.

FACTS
On October 2, 1995, Nortech sent plaintiff Alice Pichly a letter offering her employment as a truck driver. Enclosed was an employment contract. The letter notified her that it constituted an offer and asked her to read the employment contract. The letter instructed: "If you understand and agree to these terms, please sign and date this letter (retain the copy for your personal file) and return it to [Nortech]." Pichly signed the letter on October 25, 1995, indicating her acceptance of the terms of the offer.
Plaintiff Thomas Keshishian received an almost identical letter and employment contract, sent by Nortech on November 30, 1995, offering to employ him as a mechanic if, as with Pichly, he understood and agreed. He signed the letter on December 5, 1995.[1]
Under the heading "Dispute Resolution," the employment contract states: "Except to the extent that the Company is entitled to injunctive relief, any controversy, dispute, or claim arising out of this agreement or otherwise out of employment with the Company will be decided by binding arbitration. The rules of arbitration will be established by the American Arbitration Association and any judgment or award may be entered in any court having jurisdiction thereof. The arbitrator's judgment will award costs incurred for the proceedings and reasonable attorneys' fees to the prevailing party."
Under a separate heading entitled "General," the contract provides: "It is agreed that the Employee's breach of this agreement may cause irreparable harm to the Company which may or may not be adequately compensated by monetary damages. Accordingly, in the event of a breach or threatened breach of this agreement by the Employee, the Company shall be entitled to injunctive relief and recovery of damages including attorneys' fes [sic]."
On January 5, 1998, the plaintiffs filed a complaint in the superior court against Nortech and several Nortech employees alleging numerous torts committed against them in connection with their employment and termination at Nortech.[2] The complaint *25 included common law claims, such as termination in violation of public policy, and statutory claims, such as violation of the California Fair Employment and Housing Act (FEHA). Citing the employment contract, Nortech petitioned to compel arbitration. In response, the plaintiffs filed declarations stating (1) Nortech did not explain the provisions of the employment contract to them and (2) they did not understand that, by signing the contract, they were waiving their right to file a lawsuit alleging tort claims against Nortech.
The trial court issued an order denying the motion to compel arbitration as follows: "`[Nortech's] petition to compel arbitration is DENIED. The Court assumes without deciding that the subject arbitration provision is sufficient in its language to apply to plaintiffs [sic] claims, but the arbitration provision is both procedurally and substantively unconscionable under the cases of Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 171 Cal. Rptr. 604, 623 P.2d 165 and Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138. The employment contract is a contract of adhesion, giving the employee no meaningful chance to negotiate its terms. The element of surprise is present given the vague language in the "dispute resolution" subsection significantly affected by the succeeding language of the "general" section. Most importantly, the element of substantive unconscionability is manifest in the one-sidedness resultant from the interrelationship of the "except to the extent the company is entitled to injunctive relief phrase and its effective definition to encompass all employer claims in the "general" first paragraph. [¶] [Nortech's] suggestion in the reply papers as to the intended interpretation of the interrelationship of the two paragraphs is, to say the least, unpersuasive.'"
Nortech appeals.

DISCUSSION
The plaintiffs seek to win on emotion. For example, they state they "are hard working people who were seeking a means of survival, as opposed to executives who may seek the optimum legal advantage attainable through contractual negotiations." Statements such as these are unsupported by the evidence. There is no evidence the plaintiffs are "hard working people." Neither do we know what kind of negotiations took place between the plaintiffs and Nortech before the employment contracts were signed. Accordingly, in our analysis of the petition to compel arbitration, we ignore all unsupported factual (and emotional) statements made by the plaintiffs in their brief. (See Shaffer v. Superior Court (1995) 33 Cal.App.4th 993, 997, fn. 4, 39 Cal.Rptr.2d 506.) And there are many.
Under Code of Civil Procedure section 1281, "[a] written agreement to submit to arbitration an existing controversy ... is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."[3]
"In Armendariz, the California Supreme Court considered `a number of issues related to the validity of a mandatory employment arbitration agreement, i.e., an agreement by an employee to arbitrate wrongful termination or employment discrimination claims rather than filing suit in court, which an employer imposes on a prospective or current employee as a condition of employment.' (Armendariz, supra, 24 Cal.4th at p. 90[, 99 Cal.Rptr.2d 745, 6 P.3d 669].) The court concluded that FEHA claims `are in fact arbitrable if the arbitration permits an employee to vindicate *26 his or her statutory rights.' (Ibid., italics in original.) For such vindication to occur, `the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration.' (Id., at pp. 90-91[, 99 Cal.Rptr.2d 745, 6 P.3d 669].) In addition to those 'minimum requirements for the arbitration of unwaivable statutory claims,' the court considered objections that apply more generally to any type of arbitration imposed on an employee by an employer as a condition of employment, regardless of the type of claim being arbitrated. `These objections fall under the rubric of "unconscionability."' (Id., at p. 113[, 99 Cal.Rptr.2d 745, 6 P.3d 669].) Finding several portions of the agreement before it to be unconscionable, the Supreme Court concluded that, rather than the provisions it considered unconscionable being severable, the entire arbitration agreement was unenforceable. (Id., at p. 91 [, 99 Cal.Rptr.2d 745, 6 P.3d 669].)" (Shubin v. William Lyon Homes, Inc. (2000) 84 Cal.App.4th 1041, 1050-1051,101 Cal.Rptr.2d 390.)
In their briefs filed after transfer from the Supreme Court, the parties emphasize different parts of Armendariz. Nortech, emphasizing the first part of Armendariz, asserts the arbitration agreement is enforceable because it vindicates the plaintiffs' statutory rights. (See Armendariz, supra, 24 Cal.4th at pp. 99-113, 99 Cal. Rptr.2d 745, 6 P.3d 669.) The plaintiffs, on the other hand, assert the agreement is not enforceable because it is unconscionable, relying on the second part of Armendariz. (Id. at pp. 113-121, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The plaintiffs also assert the arbitration agreement violates public policy because it failed to put the plaintiffs on notice they were waiving jury trial on their claims. In discussing these issues, we consider both the original briefs on appeal and the briefs after transfer.

I.

Plaintiffs' Public Policy Issue
The plaintiffs assert the agreement to arbitrate is unenforceable as against public policy because it failed to place them on notice they would be waiving their statutory right to a jury trial on claims of workplace discrimination. This argument is similar but not the same as an argument they made in their original respondents' brief. In the respondents' brief, the plaintiffs argued, as part of their contention the agreement to arbitrate should not be enforced because it defeated their own reasonable expectations, that the absence of express waivers of the right to sue in court and the right to jury trial caused actual surprise, a contract defense. In their brief after transfer, the plaintiffs argue, instead, that the lack of an express waiver of jury trial causes the agreement to arbitrate to be void as against public policy.
The plaintiffs' argument in their brief after transfer concerning invalidation of the agreement to arbitrate as violative of public policy is a new issue we need not consider at this late date in the litigation. It is presented for the first time after original briefing in this court, argument, decision, grant of review, and transfer. (See Scott v. CIBA Vision Corp. (1995) 38 Cal.App.4th 307, 322, 44 Cal.Rptr.2d 902 [finding waiver in analogous situation of a new issue raised in a reply brief, absent good cause].) Nortech has never had a chance to respond to this argument. Furthermore, the Supreme Court's order transferring the case to this court for reconsideration in light of Armendariz does not require us to consider this new issue because the Armendariz court declined to consider it, as follows: "The question whether the arbitration agreement was sufficient to permit the employees to knowingly waive the right to a jury trial was not one of the issues on which the employees petitioned for review and is tangential to the principal claims on which we granted review. We decline to decide this *27 issue. [Citation.]" (24 Cal.4th at p. 99, fn. 7, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Since there is no justification for the plaintiffs' tardiness in raising this issue, they have waived it.

II.

Vindication of Statutory Rights
Following the reasoning of Armendariz, Nortech asserts the agreement to arbitrate properly vindicates the plaintiffs' statutory rights. The plaintiffs do not dispute this assertion.
As noted above, "an arbitration agreement is lawful if it `(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.'" (Armendariz, supra, 24 Cal.4th at p. 102, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

A. Neutral Arbitrators

The agreement to arbitrate at issue here provides for arbitrators pursuant to the "rules of arbiltration [sic] ... established by the American Arbitration Association...." There is no dispute that application of these rules would result in appointment of a neutral arbitrator.

B. More Than Minimal Discovery

The agreement to arbitrate must provide more than minimal discovery. The Armendariz held that when the parties agree to arbitrate statutory claims, a court may infer, absent express language to the contrary, that the employer has agreed to incorporate into the agreement "such procedures as are necessary to vindicate that claim," including the provisions of the California Arbitration Act (CAA). (24 Cal.4th at pp. 105-106, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Pursuant to Armendariz, we conclude that Nortech has impliedly consented by agreeing to arbitrate the statutory claims to allow sufficient discovery for plaintiffs to adequately arbitrate their statutory claims, because there is no contrary express provision in the agreement to arbitrate. (Ibid.)

C. Written Award

The Armendariz court stated: "[I]n order for [appropriate] judicial review to be successfully accomplished, an arbitrator in [a] FEHA case must issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based. While such written findings and conclusions are not required under the CAA [citations], nothing in the present arbitration agreement precludes such written findings, and to the extent it applies to FEHA claims the agreement must be interpreted to provide for such findings." (24 Cal.4th at p. 107, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The same is true of the agreement in this case.

D. Limitation of Remedies

"[A]n agreement to arbitrate a statutory claim implicitly incorporates `the substantive and remedial provisions of the statute' so that parties to the arbitration would be able to vindicate their `"`statutory cause of action in the arbitral forum.' [Citation.]"'" (Armendariz, supra, 24 Cal.4th at p. 103, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Nothing in the agreement defeats this implicit incorporation.

E. Payment by Employee of Unreasonable Costs or Any Arbitrator's Fees

"[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (Armendariz, supra, 24 Cal.4th at pp. 110-111, 99 Cal. *28 Rptr.2d 745, 6 P.3d 669.) "[A] mandatory employment arbitration agreement that contains within its scope the arbitration of FEHA claims impliedly obliges the employer to pay all types of costs that are unique to arbitration. Accordingly, we interpret the arbitration agreement in the present case as providing, consistent with the above, that the employer must bear the arbitration forum costs. The absence of specific provisions on arbitration costs would therefore not be grounds for denying the enforcement of an arbitration agreement. [Citation.]" (Id. at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669, italics in original.)
Here, the agreement provides for an "award [of] costs incurred for the proceedings and reasonable attorneys' fees to the prevailing party." But it does not state what costs are subject to the award of costs. The requirement of Armendariz that the employer bear the arbitration forum costs is implicit in an agreement to arbitrate, and thus the costs provision in this agreement should not be read to include an award of those costs the employer is impliedly obligated to bear pursuant to the pronouncement of the Armendariz court. Accordingly, there is no violation of the requirements of Armendariz concerning an agreement to arbitrate a FEHA claim.

III.

Unconscionability
Civil Code section 1670.5, subdivision (a) gives courts authority to refuse to enforce an unconscionable contract or clause of a contract. It states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."
Conscionability review involves two elements: procedural conscionability and substantive conscionability. A contract or clause of a contract will be enforced unless it is both procedurally and substantively unconscionable. (24. Hour Fitness, Inc. v. Superior Court (1998) 66 Cal.App.4th 1199, 1212-1213, 78 Cal.Rptr.2d 533.)
Procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. (See Stirlen v. Supercuts, Inc., supra, 51 Cal. App.4th at p. 1532, 60 Cal.Rptr.2d 138; 24 Hour Fitness, Inc. v. Superior Court, supra, 66 Cal.App.4th at p. 1213, 78 Cal. Rptr.2d 533.)
The first step in conscionability review is to determine whether the contract is one of adhesion. (Armendariz, supra, 24 Cal.4th at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669.) "Contract of adhesion" signifies a standardized contract which a party with superior bargaining strength imposes on a weaker party, relegating the weaker party to the choice of either adhering to the contract as written or rejecting it. (Coon v. Nicola (1993) 17 Cal.App.4th 1225, 1234, 21 Cal.Rptr.2d 846.)
The only attribute of a contract of adhesion that may be shown on this record is that the employment contract was a standard contract. The plaintiffs signed essentially the same contract. Evidence of a standard contract alone, however, is insufficient to establish it is a contract of adhesion. Other factors, such as an inferior bargaining position of the party attacking the contract, are necessary elements of a contract of adhesion.
Our initial presumption, by law, is that the contract is valid and that it was negotiated at arm's length. Without evidence to the contrary, we presume "[p]rivate transactions are fair and regular." (Civ.Code, § 3545.)
Without supporting evidence, we will not presume a party to a contract held a weaker bargaining position. (See West *29 v. Henderson (1991) 227 Cal.App.3d 1578, 1586, 278 Cal.Rptr. 570.) Here, there is insufficient evidence to conclude the plaintiffs were in an inferior position to bargain. There is no evidence concerning the market for jobs. The record does not establish whether truck drivers and mechanics were in high demand or whether it was difficult to find employment in those specialties. Job markets change and, with those changes, the relative strength of the bargaining position of prospective employees and employers changes. The record also does not reveal whether the plaintiffs were already employed at the time they received offers from Nortech or whether they had offers from other potential employers. Accordingly, we cannot conclude Nortech held a superior bargaining position.
There is also insufficient evidence to establish the plaintiffs were relegated to a position of accepting the contract as drafted by Nortech or rejecting employment. While it appears Nortech made an offer of employment, there is nothing to suggest the offer was not negotiable. The letter authorized the plaintiffs to sign the contract if they understood and agreed. It was their burden to satisfy themselves whether they understood and agreed. The letter did not state that if the plaintiffs did not sign the contract as it was presented they would not be employed. The record does not show what, if any, negotiation took place before the offers were extended. Thus, we cannot conclude the offer was made on a take-it-or-leave-it basis.
It is plain to see that the plaintiffs made no effort to establish the employment contract was a contract of adhesion. They, instead, seek a presumption contrary to that explicitly mandated by law. (Civ. Code, § 3545.) Apparently, the trial court made such a presumption when it stated: "The employment contract is a contract of adhesion, giving the employee no meaningful chance to negotiate its terms." We come to the opposite conclusionthe contract is not adhesivebecause (1) we presume the contract is fair and regular and (2) there is insufficient evidence in the record to rebut that presumption.
On this record, the employment contract has not been shown to be a contract of adhesion. This leads us to conclude the circumstances under which the plaintiffs signed the contract were not oppressive.
In their brief on transfer, the plaintiffs argue: "Without citing to any `evidence' of [procedural] unconscionability, Armendariz makes short shrift of the fact that the arbitration agreement was adhesive: `It was imposed on employees as a condition of employment and there was no opportunity to negotiate.' ([Armendariz, supra,] at 114-115, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The high court cites to no factual basis for this assertion, but rather makes the commonsense presumption that an employer is in a superior bargaining position to almost all employees in any preemployment arbitration contract."
The plaintiffs read too much into this language from Armendariz. First, if the Supreme Court states the arbitration agreement was imposed on the employees as a condition of employment without an opportunity to negotiate, we must conclude that statement accurately reflected the facts of the case. The Armendariz court noted that there was "little dispute" that the contract was adhesive. (24 Cal.4th at pp. 114-115, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Unlike a party who must cite to the record for every fact asserted (see Cal. Rules of Court, rule 15(a)), there is no analogous rule requiring an appellate court to do the same. And second, Armendariz does not expressly or implicitly establish, as the plaintiffs put it, a "presumption that an employer is in a superior bargaining position to almost all employees in any preemployment arbitration contract."
Plaintiffs have not shown that the agreement to arbitrate is procedurally unconscionable.[4]
This contract also is not substantively unconscionable. Substantive unconscionability arises when the contractual *30 terms are so one-sided that they shock the conscience or impose harsh or oppressive terms. (See 24 Hour Fitness, Inc. v. Superior Court, supra, 66 Cal.App.4th at p. 1213, 78 Cal.Rptr.2d 533.) In the context of employment contracts, the arbitration agreement must have a "modicum of bilaterality." (Armendariz, supra, 24 Cal.4th at p. 117, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The Armendariz court noted: "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope, ... the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." (Id. at p. 118, 99 Cal.Rptr.2d 745, 6 P.3d 669, italics added.) These pronouncements in Armendariz are of limited assistance to the plaintiffs in this case because, as we discussed above, the plaintiffs have not shown they were the weaker party or that the employment contract was a contract of adhesion. Nevertheless, we discuss substantive conscionability.
Because the plaintiffs allege the terms of the contract concerning dispute resolution were deceptive and vague, we analyze the contract to come to our own conclusion. As noted above, the paragraph on dispute resolution requires arbitration of all claims arising from the employment "except to the extent that the Company is entitled to injunctive relief." In the separate "general" section, the contract provides that Nortech "shall be entitled to injunctive relief and recovery of damages including attorneys' fes [sic]."
Setting aside for a moment contractual references to injunctive relief, we conclude the contract provides for arbitration of all claims for damages, without regard to which party raises the claims. While the contract explicitly provides that Nortech may be entitled to monetary damages in the case of a breach by the plaintiffs, it does not preclude recovery by the plaintiffs of monetary damages in the case of a breach by Nortech. While not explicit in the contract, the plaintiffs' right to recover contract damages in the case of a breach by Nortech arises by law. (See, generally, Civ.Code, §§ 3274, 3300 et seq.) Thus, the contract gives Nortech no right in this regard which the plaintiffs do not also possess. Furthermore, even though the attorney fees provision is unilateral on the face of the "general" section, it is reciprocal by statute. If the plaintiffs prevail, they are entitled to an award of attorney fees. (Civ.Code, § 1717.) In any event, the "dispute resolution" section makes the right to attorney fees on the part of the "prevailing party" explicit.
The plaintiffs jump to the conclusion the contract gives Nortech "the rights to seek both equitable and legal relief in court, while thoroughly stripping those rights from its employees." While it is true that the contract appears to give Nortech alone the right to obtain injunctive relief in court, no rational reading of the contract allows Nortech to obtain monetary damages in court. The "general" section states that Nortech may obtain injunctive and monetary relief; it does not specify the forum. Only the "dispute resolution" section specifies a forum, arbitration, and it only excepts injunctive relief from the obligation to arbitrate. To the extent there is any ambiguity, it is construed in favor of arbitration (Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street (1983) 35 Cal.3d 312, 323, 197 Cal.Rptr. 581, 673 P.2d 251; Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 9, 10 Cal.Rptr.2d 183, 832 P.2d 899) and against the drafting party which, here, seeks to create an exception to arbitration. (Graham v. Scissor-Tail, Inc., supra, 28 Cal.3d at p. 819, fn. 16, 171 Cal.Rptr. 604, 623 P.2d 165.)
In this action, which is solely for damages, the plaintiffs seek no equitable relief. Since the employment contract is clear as to damages and requires both parties to litigate such claims by way of arbitration, the clause in the contract enabling Nortech *31 to seek injunctive relief in the trial court is of little, if any, relevance.
Furthermore, an unconscionable provision may be stricken from an arbitration agreement as long as the contract is not "permeated" by unconscionability. (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.) There is no such permeation present in this case. The rather basic arbitration agreement sends both parties to the arbitration forum for all claims which can be submitted to arbitration, "[e]xcept to the extent that the Company is entitled to injunctive relief...." By striking that provision, we are left with a thoroughly evenhanded agreement. Having so observed, however, we note that whether to strike the injunctive relief provision, of course, is academic because the employment contract has not been shown to be a contract of adhesion. Moreover, Armendariz pointed out that "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope," although the doctrine of unconscionability does limit the extent to which a stronger party may impose the arbitration forum on the weaker party without accepting that forum for itself. (Id. at p. 118, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The fact that a party seeking injunctive relief may go to the courts for preliminary injunctive relief, notwithstanding the agreement to arbitrate (Code Civ.Proc, § 1281.8), may justify, for cost reasons, excluding injunctive relief from the arbitration clause. This also addresses plaintiffs' point that the exception for injunctive relief makes the arbitration agreement one-sided.
While the agreement to arbitrate is generalthat is, it does not specify exactly what actions must be arbitrated it is not too vague. Indeed, arbitration is highly favored and courts "`indulge every intendment to give effect to such proceedings.' [Citation.]" (Moncharsh v. Hetty & Blase, supra, 3 Cal.4th at p. 9, 10 Cal. Rptr.2d 183, 832 P.2d 899.) The failure to specify actions, such as workers' compensation proceedings, to which the arbitration provisions of the employment contract do not apply, does not render the arbitration provisions unenforceable in this dispute. Certainly, it cannot be argued the employment contract limits the employee's statutory rights with respect to workers' compensation. The California Constitution vests plenary power over workers' compensation in the Legislature. (Cal. Const, art. XIV, § 4; see Board of Education v. Round Valley Teachers Assn. (1996) 13 Cal.4th 269, 276-277, 52 Cal. Rptr.2d 115, 914 P.2d 193.)
Plaintiffs argue that the agreement's attorney fees provision, awarding reasonable attorney fees to the prevailing party, unconscionably alters the attorney fees provisions under the FEHA because "an employer is not entitled to attorneys' fees or costs unless it proves that the underlying claim had no merit." We reject this argument for two reasons. First, we observe that not all claims to be arbitrated under the agreement are FEHA claims. As to traditional contractual claims, the attorney fees provision of the agreement is unremarkable, awarding fees to the prevailing party. And second, as noted in Armendariz, to the extent the agreement may be inconsistent with the FEHA, the FEHA prevails. (See Armendariz, supra, 24 Cal.4th at p. 103, 99 Cal. Rptr.2d 745, 6 P.3d 669.) The attorney fees provision of the agreement to arbitrate is reasonable and unremarkable on its face, and, to the extent it may be inconsistent with the FEHA, it is severable and can be stricken. (Id. at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669; see also Civ. Code, § 1670.5, subd. (a).) Accordingly, the attorney fees provision in the arbitration agreement does not render the agreement unenforceable.
In a supplemental letter brief, the plaintiffs cite Pinedo v. Premium Tobacco Stores, Inc. (2000) 85 Cal.App.4th 774, 102 Cal.Rptr.2d 435 (hereafter Pinedo). They assert the arbitration agreement in Pinedo, in which the Court of Appeal found the agreement unenforceable, applying Armendariz, is "very similar" to the agreement in this case. We disagree. The agreement in Pinedo was unconscionably *32 one-side and did not have a "modicum of bilaterality." (See Armendariz, supra, 24 Cal.4th at p. 117, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
The following is the Pinedo court's summary of the provisions of the arbitration agreement: "This agreement limits the recovery the employee may obtain to the amount of wages paid to the employee for the last six months prior to termination less any unemployment benefits or pay from another job. It also precludes recovery based upon statutory claims, including claims `for harassment or discrimination due to race, religion, sex or age.' In other words, it precludes recovery of any and all damages contemplated within the FEHA, including recovery of attorney fees. The cost provision is potentially more oppressive than in Armendariz: it requires that all costs initially be borne by the employee. The employee is further disadvantaged here by being required to arbitrate in Oakland, California. The agreement is also inherently one-sided: it addresses only claims involving terms of employment described as claims based on `changes in position, conditions of employment or pay, or the end of employment.' These are claims which would normally be brought by the employee against the employer. The limitation on damages applies only to damages awarded in favor of the employee, not to damages claimed by the employer." (Pinedo, supra, 85 Cal.App.4th at p. 781, 102 Cal.Rptr.2d 435, italics omitted.)
The Pinedo agreement severely disadvantaged the employee, restricting the employee's damages to six-month's pay while imposing no limitation on the employer's damages, requiring the employee to pay all costs of arbitration, forcing the employee to arbitrate in a distant forum, and imposing arbitration only for claims the employee might make. In other words, there was not a modicum of bilaterality. As noted above, however, the present case involves an arbitration agreement that, while not perfectly constructed under the standard subsequently set by Armendariz, is not so one-sided that it cannot be enforced to the extent it is not in conflict with the Supreme Court's statements in Armendariz. It is not permeated by unconscionability as were the agreements in Armendariz and Pinedo.
Since the arbitration clause is neither one-sided nor overly harsh, we conclude it is not substantively unconscionable. Neither the limitation on the plaintiffs' remedies nor the unilateral arbitration clause present in Armendariz is present here. The provisions requiring arbitration of claims do not shock the conscience. As we noted earlier, courts must indulge every contractual intendment in favor of arbitration. (Moncharsh v. Heily & Blase, supra, 3 Cal.4th at p. 9, 10 Cal.Rptr.2d 183, 832 P.2d 899.) Accordingly, the trial court should not have refused to enforce the arbitration provisions.

DISPOSITION
The order denying Nortech's petition to compel arbitration is reversed and the matter is remanded for entry of a new order compelling arbitration. Nortech shall recover its costs on appeal.
DAVIS, Acting P.J., and KOLKEY, J., concur.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] Since the contracts signed by Pichly and Keshishian were virtually identical, we refer to those contracts singularly, even though there were two contracts.
[2] Since the plaintiffs' briefing makes no attempt to differentiate between Nortech and the other defendants, we refer hereafter to the defendants collectively as Nortech.
[3] Neither party contends that the Federal Arbitration Act, which has a similar provision, applies. (See 9 U.S.C. § 2; see also Armendariz, supra, 24 Cal.4th at pp. 96-99, 99 Cal. Rptr.2d 745, 6 P.3d 669; Circuit City Stores, Inc. v. Adams (2001) 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 [holding most employment claims may be litigated under the Federal Arbitration Act].)
[4] We acknowledge that many employment contracts will be adhesion contracts, but we will not simply assume this without the presentation of relevant evidence.